JACKSONVILLE SHIPYARDS, INC., Petitioner,

v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, United States Department of Labor, Respondents.

No. 86–3533.

United States Court of Appeals, Eleventh Circuit.

April 21, 1988.

---

Taylor, Day, Rio & Mercier, John C. Taylor, Jr., Ada A. Hammond, Jacksonville, Fla., for petitioner.

Marianne Demetral Smith, Solicitor of Labor, U.S. Dept. of Labor, Washington, D.C., for Office of Workers' Compensation Programs.

Bette T. Miller, Rogers, Towers, Bailey, Jones & Gay, Jacksonville, Fla., Janet R. Dunlop, U.S. Dept. of Labor, Washington, D.C., for amicus curiae-cigna.

Before TJOFLAT and KRAVITCH, Circuit Judges, and TUTTLE, Senior Circuit Judge.

TJOFLAT, Circuit Judge:

In this case, an employer found liable for disability compensation under the Longshore and Harbor Workers' Compensation Act sought relief under section 8(g) of that Act, 33 U.S.C. § 908(f) (1982). The Administrative Law Judge (ALJ) denied relief and the Benefits Review Board affirmed. We reverse.

## I.

William J. Stokes worked in a Jacksonville, Florida shipyard from October 27, 1958 until August 11, 1976. During that eighteen-year period, the shipyard was owned by three different entities. The

third owner, Jacksonville Shipyards, Inc., owned the shipyard during the last eleven years of Stokes' employment. Over that period, Jacksonville Shipyards was insured first by Insurance Company of North America and then by Aetna Casualty and Surety Company. On January 1, 1976, seven months before Stokes stopped working at the shipyard, Jacksonville Shipyards became self-insured.

Throughout the 1960's, Stokes worked at the shipyard as a sandblaster in the paint and labor department. In 1971, he began to experience shortness of breath when climbing stairs and ladders. That same year, a chest x-ray was performed which indicated a condition consistent with silicosis, a lung disease that results from exposure to dust and silica.

On June 10, 1971, Jacksonville Shipyards transferred Stokes from the paint and labor department to the dry dock department, where he worked at maintaining and repairing equipment. Stokes continued to experience shortness of breath, however, and in March 1975, x-rays again revealed a condition consistent with silicosis. Tests also revealed that Stokes had contracted tuberculosis. Due to his deteriorating health, Stokes stopped working at the shipyard on August 12, 1976.

■ Stokes then filed a permanent total disability claim under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901–950, against Jacksonville Shipyards and its former insurance carriers, as well as Stokes' previous employers at the shipyard and their carriers. A hearing was held before an ALJ on September 1, 1983. At the outset of the hearing, Jacksonville Shipyards stipulated that it had become self-insured on January 1, 1976, and that Stokes had been exposed to dust and silica up until the time he stopped

working. Under the so-called "last injurious exposure" rule applicable to total disability claims, the last employer to have exposed the claimant to injurious stimuli bears full liability for disability compensation, regardless of whether that exposure actually injured the claimant. *See Travelers Ins. Co. v. Cardillo*, 225 F.2d 137, 145 (2d Cir.), *cert. denied*, 350 U.S. 913, 76 S.Ct. 196, 100 L.Ed. 800 (1955). Thus, by stipulating that the last exposure occurred after it became self-insured, Jacksonville Shipyards conceded that it alone was liable for the full amount of Stokes' compensation claim. Accordingly, the ALJ dismissed Jacksonville Shipyards' former insurance carriers as well as the previous owners of the shipyard and their carriers.

■ Having conceded liability, Jacksonville Shipyards requested relief under 33 U.S.C. § 908(f) (1982 & Supp.1985).[1] That section provides that when a partially disabled worker becomes totally disabled as a result of a work-related incident, the employer will be liable only for the first 104 weeks of disability compensation; after that, disability compensation is paid from a "special fund" created from payments by employers. In evaluating requests for relief under section 908(f), courts have applied a three-part test developed in *C & P Telephone Co. v. Director, OWCP*, 564 F.2d 503 (D.C.Cir.1977). Under that test, (1) the employee must have had a preexisting, permanent partial disability; (2) this condition must have been manifest to the employer; and (3) the employee must have experienced a second injury, with the preexisting partial disability contributing to the seriousness of the second injury. *Accord Director, OWCP v. Todd Shipyards Corp.*, 625 F.2d 317, 319 (9th Cir.1980); *Director, OWCP v. Potomac Elec. Power Co.*, 607 F.2d 1378, 1382 (D.C.Cir.1979).

---

1. Section 908(f) provides in pertinent part:
   (1) In any case in which an employee having an existing permanent partial disability suffers injury, the employer shall provide compensation for such disability as is found to be attributable to that injury.... In all ... cases of total permanent disability or of death, found not to be due solely to that injury, of an employee having an existing permanent par-

tial disability, the employer shall provide ... compensation payments or death benefits for one hundred and four weeks only....
   (2) After cessation of the payment for the period of weeks provided for herein, the employee or his survivor entitled to benefits shall be paid the remainder of the compensation that would be due out of the special fund established in section 944 of this title.

Here, the ALJ found that the first two conditions were satisfied: Stokes had a preexisting permanent partial disability as early as 1971, and that condition had been manifest to Jacksonville Shipyards. The ALJ concluded, however, that the third condition was not satisfied because the evidence failed to show a "second injury." In the ALJ's view, there would be a second injury only if the evidence showed (1) that Stokes had been further exposed to silica after his partial disability was manifest, and (2) that this exposure had actually aggravated the preexisting condition. Although the ALJ found that the evidence showed further exposure to silica, he concluded that the evidence failed to show a causal relationship between that exposure and Stokes' ultimate total disability. Rather, the ALJ found that the total disability was the natural progression of the earlier partial disability and therefore had resulted from the same, earlier exposure that had caused the partial disability. Having thus found no second injury, the ALJ denied Jacksonville Shipyards' request for relief under section 908(f). The Benefits Review Board affirmed, and Jacksonville Shipyards appeals.[2]

## II.

On appeal, Jacksonville Shipyards does not contest the ALJ's findings of fact. Rather, it argues that the ALJ erred as a matter of law in requiring it to prove that Stokes' total disability resulted in fact from the silica exposure that occurred after the partial disability had become manifest.

Jacksonville Shipyards asserts that the mere fact of Stokes' further exposure after the partial disability became manifest should suffice to establish a "second injury" for purposes of section 908(f). In other words, Jacksonville Shipyards asserts that proof of such subsequent exposure should give rise to a conclusive presumption that the exposure, and not the natural progression of the partial disability, was responsible for the total disability.

■ The purpose of section 908(f) is to encourage employers to hire partially disabled persons, or apropos to this case, to retain employees who become partially disabled in the course of their employment. See H.Rep. No. 1441, 92d Cong., 2d Sess. 8, reprinted in 1972 U.S.Code Cong. & Admin.News 4698, 4705–06. In keeping with the congressional design, the provision should be given a liberal interpretation. See Maryland Shipbuilding & Drydock Co. v. Director, OWCP, 618 F.2d 1082, 1084 (4th Cir.1980). Thus, section 908(f) relief should be granted if a denial of relief would give rise to incentives inconsistent with the incentives Congress sought to promote.

■ Under the "last injurious exposure" rule, the rule that the ALJ applied to hold Jacksonville Shipyards liable for Stokes' disability compensation, the last employer to have exposed the claimant to injurious stimuli bears full liability for total disability compensation, regardless of whether that exposure actually aggravated a preexisting condition.[3] Under the ALJ's ap-

---

**2.** We have jurisdiction to review final orders of the Benefits Review Board under 33 U.S.C. § 921(c) (1982). Here, the Benefits Review Board affirmed the ALJ's determination on the merits, but vacated that part of the ALJ's order awarding an attorney's fee and remanded the case to the ALJ for further consideration of the award. In McQurter v. City of Atlanta, 724 F.2d 881, 882 (11th Cir.1984), we held that "[w]hen attorney's fees are similar to costs or collateral to an action, a lack of determination as to the amount does not preclude the issuance of a final, appealable judgment on the merits." (Citations omitted; quoting Holmes v. J. Ray McDermott & Co., 682 F.2d 1143 (5th Cir.1982), cert. denied, 459 U.S. 1107, 103 S.Ct. 732, 74 L.Ed.2d 956 (1983)). The fees in this case were awarded under 33 U.S.C. § 928 (1982), which provides for the awarding of a reasonable attorney fee "in addition to the award of compensation." We conclude that the fee award in this case was collateral to the main claim, and that we are therefore presented with an appealable final order.

**3.** The Director argues that the ALJ merely accepted Jacksonville Shipyards' stipulation and never actually found that Jacksonville Shipyards was responsible for the "last injurious exposure." Since the ALJ never made a "last injurious exposure" finding, the Director reasons, we are foreclosed from deciding whether such exposure would be sufficient to satisfy the "second injury" prerequisite to section 908(g) relief.

proach to determining the availability of section 908(f) relief to the employer, on the other hand, such exposure by itself is not sufficient to establish the requisite "second injury." Were the ALJ's approach to prevail, an employer in Jacksonville Shipyards' position would have an incentive to fire all partially disabled employees before becoming self-insured: the employer would know that any minimal exposure would be sufficient to trigger full disability liability under the "last injurious exposure" rule, yet insufficient to trigger entitlement to relief under section 908(f). In light of the purpose behind section 908(f), we cannot countenance the creation of that kind of incentive structure. We therefore hold that exposure sufficient to trigger the "last injurious exposure" rule is sufficient to satisfy the "second injury" requirement under section 908(f).[4] Because such exposure occurred in this case, we reverse the ALJ's order denying appellant's request for relief under section 908(f).

REVERSED.

We disagree with the Director's interpretation of the ALJ's actions. A fair reading of the ALJ's original order indicates that the ALJ did actually find that Jacksonville Shipyards exposed Stokes to injurious stimuli up until the date he stopped working. The ALJ stated, for example, that "[t]he evidence here ... does show continued employment with some indirect exposure to sandblasting."

4. Of course, to qualify for relief under section 908(f), the employer must still satisfy the first two prongs of the *C & P Telephone Co.* test. Here, as noted in the text, the ALJ found that Jacksonville Shipyards had satisfied those prongs. We leave that finding undisturbed.