225 F.2d 137
 The TRAVELERS INSURANCE COMPANY and Todd Shipyards
Corporation, Plaintiffs-Appellants,
v.
Frank A. CARDILLO, Deputy Commissioner, Federal Security
Agency, Bureau of Employees' Compensation, Second
Compensation District, and Joseph
Tropea, Defendants-Appellees.
IRA S. BUSHEY & SONS, Inc., Plaintiff-Employer-Appellant,
and American Policyholders' Insurance Company and/or
American Mutual Liability Insurance Company,
Plaintiff-Insurance Carrier-Appellant, and Hartford
Accident& Indemnity Company, Plaintiff-Insurance
Carrier-Appellant, and The State Insurance Fund,
Plaintiff-Insurance Carrier-Appellant,
v.
Thorleif JOHANSEN, Defendant-Claimant-Respondent, and Frank
A. Cardillo, Deputy Commissioner, Second
Compensation District, Defendant-Respondent.
TODD SHIPYARDS CORPORATION, Inc.,
Employer-Plaintiff-Appellant, and Massachusetts
Bonding & Insurance Company, Insurance
Carrier-Plaintiff-Appellant,
v.
UNITED STATES DEPARTMENT OF LABOR, Bureau of Employees'
Compensation, Second District and Frank A.
Cardillo, as Deputy Commissioner and
Raymond Lebowitz, Defendants-Appellees.
 Nos. 308, 305, 346, Dockets 23558, 23216, 23683.
 United States Court of Appeals Second Circuit.
 Argued June 8, 1955.
Decided July 19, 1955.
 
 Galli & Locker, New York City (Urban S. Mulvehill, New York City, of counsel), for plaintiffs-appellants, The Travelers Insurance Company and Todd Shipyards Corporation.
 Alexander & Ash, New York City (Sidney A. Schwartz, New York City, of counsel), for appellants, Ira S. Bushey & Sons, Inc., and American Mutual Liability Insurance Company.
 Joseph Dean Edwards, New York City (Cornelius V. Gallagher and Paul Koch, New York City, on the brief), for Ira S. Bushey & Sons, Inc., Employer, and Hartford Accident & Indemnity Company, Insurance Carrier.
 Bernard Katzen, New York City, Gen. Atty. of The State Insurance Fund, New York City (Victor Fiddler, Glen Oaks, N.Y., and George J. Hayes, New York City, on the brief), for appellants, Ira S. Bushey & Sons, Inc. and The State Insurance Fund.
 Joseph Dean Edwards, New York City (Cornelius V. Gallaher and Paul Koch, New York City, on the brief), for Todd Shipyards Corporation, Inc., Employer, and Massachusetts Bonding & Insurance Company, Insurance Carrier.
 Leonard P. Moode, U.S. Atty., for E.D. of New York, Brooklyn, N.Y., Elliott Kahaner, Asst. U.S. Atty., Brooklyn, N.Y. (Stuart Rothman, Solicitor of Labor, Ward E. Boote, Asst. Solicitor, and Herbert P. Miller, Atty., U.S. Dept. of Labor, Washington, D.C., of counsel), for appellees Deputy Commissioners.
 Irving Israel, New York City, by Leonard Taubenblatt, New York City, for appellees, Tropea, Johansen and Lebowitz.
 Before CHASE and MEDINA, Circuit Judges, and RYAN, District Judge.
 MEDINA, Circuit Judge.
 
 
 1
 These are appeals from three separate orders entered by the United States District Court for the Eastern District of New York granting defendants' motions for summary judgment, dismissing complaints in actions brought pursuant to 33 U.S.C.A. § 921 to review and set aside as 'not in accordance with law' certain compensation orders made by the Deputy Commissioner in each case, under the provisions of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq., and denying plaintiffs' cross-motions for summary judgment.
 
 
 2
 Although the legal questions in all these cases are substantially the same, the factual situations vary somewhat and will be summarized separately.
 
 Tropea Award
 
 3
 The record discloses that claimant Joseph Tropea's history of employment during the period preceding the filing of his claim for compensation was as follows:
 
 
 4
 '(1) September 3, 1942 to November 16, 1945, employed by Todd Shipyards Corporation.
 
 
 5
 '(2) November 16, 1945 to July 29, 1948, unemployed, except for work at Rockaway Playland.
 
 
 6
 '(3) July 29, 1948 to May 24, 1949, employed by Todd.
 
 
 7
 '(4) May 24, 1949 to December 20, 1950, unemployed.
 
 
 8
 '(5) December 20, 1950 to date, employed by Todd.'
 
 
 9
 and that Todd Shipyards Corporation was insured by the following carriers during the relevant period:
 
 
 10
 '(1) 1940 to May 1, 1947, Fidelity and Casualty Company of New York.
 
 
 11
 '(2) May 1, 1947 to May 1, 1949, Massachusetts Bonding and Insurance Company.
 
 
 12
 '(3) May 1, 1949 to date, The Travelers Insurance Company.'
 
 
 13
 Claimant was employed by Todd as a sheet metal worker and throughout the various periods of employment 'worked is noisy places, using a chipping gun with a great many chippers and riveters around.' He first experienced difficulty with his hearing early in 1953, when he detected a temporary ringing, and in April or May of 1953 he began to notice some impairment in his ability to hear. As a result of the persistence of the impairment, claimant, on September 4, 1953, consulted an ear specialist who, after examination, advised him that he had a permanent loss of hearing due to his employment and on September 30, 1953, a claim was filed with the Deputy Commissioner for compensation for occupational loss of hearing.
 
 
 14
 The Deputy Commissioner found that the claimant's occupational exposure resulted in permanent hearing impairment and constituted an injury; that the claim was timely filed from September 4, 1953, the date claimant had knowledge of permanent occupational loss of hearing; that although written notice of injury jury was not given within thirty days, the employer had knowledge of the injury and was not prejudiced by the lack of written notice; that claimant's average annual earnings at the time of his injury amounted to $4,600; that the period of employment with Todd Shipyards Corporation commencing on December 20, 1950, was the last employment in which claimant was exposed to injurious noises; and that nothing had been paid the claimant as compensation. In view of these findings, the Deputy Commissioner concluded that the employer in the last employment during which the injurious and cumulative effects of the occupational exposure manifested themselves is liable for the payment of compensation; that the Travelers Insurance Company, the carrier covering the employer during such last employment, is liable to discharge the duties and obligations of the employer in respect of such liability; and that as a result of the injury sustained claimant has a permanent partial disability equivalent to 6% binaural loss of hearing, for which he is entitled to 12 weeks' compensation at the maximum rate of $35 a week in the amount of $420.
 
 
 15
 The only issue raised on appeal with respect to this claim is the appropriateness of the method used by the Deputy Commissioner in allocating liability to the employer and carrier involved.
 
 Johansen Award
 
 16
 Claimant Thorleif Johansen was employed as follows:
 
 
 17
 '(1) April 1930-1940 employed by Ira S. Bushey & Sons, Inc. with the exception of a six month period in 1936.
 
 
 18
 '(2) 1940-1942 employed by the United States Navy Yard in Brooklyn.
 
 
 19
 '(3) 1942-date employed by Ira S. Bushey & Sons, Inc. with the exception of a one year vacation in 1946.'
 
 
 20
 During claimant's periods of employment, Ira S. Bushey & Sons, Inc., was insured by the following carriers:
 
 
 21
 '(1) June 8, 1927 to June 1, 1953 American Policyholder's Insurance Company and/or American Mutual Liability Insurance Company.
 
 
 22
 '(2) June 1, 1953 to September 9, 1953 Hartford Accident and Indemnity Company.
 
 
 23
 '(3) September 9, 1953 to September 16, 1953 The State Insurance Fund.'
 
 
 24
 Johansen was employed variously as an iron worker, shipfitter and ship carpenter in the repair of vessels and was constantly exposed to loud noises. In December, 1952, claimant noticed recurring episodes of buzzing and ringing in his ears and in January or February, 1953, became aware of a loss of hearing which he thought was of a temporary nature. When no diminution of the impairment was perceived for several months, claimant, on September 16, 1953, went to an ear specialist, who, after examination, informed the claimant that he had a permanent loss of hearing due to his employment. On October 5, 1953, claimant filed a claim with the Deputy Commissioner to recover for such permanent hearing loss.
 
 
 25
 The Deputy Commissioner found that, as a result of his employment, claimant sustained occupational injury, consisting of permanent binaural impairment of hearing; that the injury arose naturally out of his employment; that although written notice of injury was not given within thirty days, the employer had knowledge of the injury and had not been prejudiced by lack of written notice; that the claim for compensation was timely filed within one year from the date when claimant first had knowledge of a permanent hearing loss due to his employment; that the claimant's average annual earnings at the time of his injury exceeded $2,730; and that nothing had been paid to the claimant as compensation. Accordingly, the Deputy Commissioner concluded that Ira S. Bushey & Sons, Inc., the last employer, in whose employment claimant was continuously exposed for eleven years, was liable for payment of compensation; that the insurance carriers who successively covered such liability of the employer during the period of claimant's last employment were jointly, equally and severally responsible for the discharge of the duties and obligations of the last employer in respect of such liability; and that, as a result of the injury sustained, claimant had suffered permanent partial disability equivalent to 13.8% binaural loss of hearing compensable under the Longshoremen's and Harbor Workers' Act at the maximum rate of $35 a week for 27.6 weeks, or a total amount of $966.
 
 
 26
 The employer and the three insurance companies involved attack the award on various grounds. All contend that claimant is not entitled to any recovery under the statute in the absence of affirmative proof of impairment of wage-earning capacity. Each of the insurance companies attacks the Deputy Commissioner's determination that all the carriers covering the claimant's last period of employment with Ira S. Bushey & Sons, Inc., were jointly, severally and equally liable; but each suggests a different formula which should be applied to these occupational disease compensation cases. Two of the companies assert, in addition, that the claim should be set aside for failure to give appropriate notice of injury and failure to file a claim within the time period specified by the statute.
 
 Lebowitz Award
 
 27
 Claimant Raymond Lebowitz had been employed by Todd Shipyards Corporation as a marine electrician from 1942 to and beyond the time of the filing of this claim for compensation.
 
 
 28
 During this period of employment Todd was insured by the following carriers:
 
 
 29
 '(1) February 6, 1942 to May 1, 1947 Fidelity & Casualty Company of New York.
 
 
 30
 '(2) May 1, 1947 to May 1, 1949 Massachusetts Bonding and Insurance Company.
 
 
 31
 '(3) May 1, 1949 to August 22, 1953 Travelers Insurance Company.'
 
 
 32
 Throughout the time spent working for Todd, claimant was required to work around ships and was exposed to noises caused by riveting, hammering, chiseling and other industrial activities. In January, 1953, claimant became aware of intermittent noises and ringing in his ears and on August 22, 1953, consulted an ear specialist who, after an examination, informed claimant that he had a permanent loss of hearing due to his employment. As a result, on September 16, 1953, claimant filed with the Deputy Commissioner to recover compensation for the permanent hearing impairment.
 
 
 33
 The Deputy Commissioner found that, as a result of his employment, claimant sustained occupational injury, consisting of permanent binaural impairment of hearing; that the injury arose naturally out of his employment; that although written notice of injury was not given within thirty days, the employer had knowledge of the injury and had not been prejudiced by the lack of written notice; that the claim was timely filed within one year from the date claimant first had knowledge of a permanent hearing loss due to his employment; that the claimant's average annual earnings at the time of his injury exceeded $2,730; and that nothing had been paid the claimant as compensation. The Deputy Commissioner thereupon concluded that Todd Shipyards Corporation, the last employer, in whose employment claimant was continuously employed for eleven years, was liable for the payment of compensation; that the insurance carriers who successively covered such liability of the employer during the period of claimant's last employment were jointly, equally and severally responsible for the discharge of the duties and obligations of the employer in respect of such liability; and that, as a result of the injury sustained, claimant had suffered permanent partial disability equivalent to 15% binaural loss of hearing compensable under the Longshoremen's and Harbor Workers' Act at the maximum rate of $35 a week for 30 weeks or a total amount of $1,050.
 
 
 34
 The only carrier on the risk during claimant's period of employment which appealed from the award is the Massachusetts Bonding and Insurance Company, the carrier from May 1, 1947 to May 1, 1949. The issues raised on this appeal are the same as those raised by the carrier-appellants in connection with the Johansen award.
 
 Timeliness of Notice and Claim
 
 35
 Appellants' contentions that the Johansen and Lebowitz claims are barred because they were not filed within one year from the date of the 'injury' and because written notice was not given the respective employers within thirty days from that date, are wholly without merit. With regard to the requirement of notice, the Deputy Commissioner made specific findings that the employers had knowledge of the injury and that they were not prejudiced by the failure to give written notice. Under the applicable statutory provision, such findings exempt these claims from the bar which otherwise might exist. 33 U.S.C.A. § 912(d). The attack upon the Deputy Commissioner's findings that the claims were filed within one year from the date of the 'injury' is based upon the supposition that, in occupational disease cases, the date of 'injury,' within the meaning of the applicable statute of limitations, is some date earlier than that upon which the cumulative effects of exposure manifest themselves. In support of the latter contention, reliance is placed upon cases involving 'accidental' injury in which a distinction is drawn between the specific date upon which the injury is actually inflicted and the date upon which the extent of the disabling effects of the injury becomes apparent. Although it may well be that the Congress intended that one injured in an industrial accident occurring at an identifiable time and place who, presumably, could be expected to know that he was hurt, even if, at the time, he was unaware of the extent of the disablement resulting from his injury, should be required to file a claim within one year from the date of the accident, it seems perfectly clear that a different criterion necessarily must have been contemplated in cases of occupational disease. Every claim based upon occupational disease would be barred if the one year limitation period were declared to begin running when contact is first had with the condition causing the disease or when the disease first ensues. At such a time, a potential claimant would have no occasion to realize that there is anything wrong with him, much less that he had suffered damage industrially caused. The Supreme Court has recognized the absurd effects which would result from the application of such a rule in occupational disease cases and has held, in an analogous situation arising under the limitation provisions of the Federal Employer's Liability Act, 45 U.S.C.A. § 51 et seq., that an "employee can be held to be 'injured' only when the accumulated effects of the deleterious substance manifest themselves." Urie v. Thompson, 1949, 337 U.S. 163, 170, 69 S.Ct. 1018, 1025, 93 L.Ed. 1282. Since the fact that the various claims presently before us were filed well within a year of the 'date of manifestation' is undisputed, we conclude that they are not barred by the statute of limitations.
 
 Impairment of Earning Capacity
 
 36
 The contention is made that affirmative evidence of a diminution in wages or in wage-earning capacity directly attributable to the claimed injury is indispensable to recovery under the Act. It is urged that since the claimants herein were able to continue at their customary jobs, they had not sustained disabling injuries which are compensable. Appellants realize that, in order to maintain their position, it is incumbent upon them to demonstrate that even in the case of 'schedule losses' it must be essential to show specific loss of wages, or that the injuries involved are not properly treated as 'schedule losses,' under 33 U.S.C.A. § 908(c)(13), but should be treated as fitting within the category of 'other cases,' in which awards are based upon the difference between the average weekly wage before the injury and the claimant's wage earning capacity after the injury. 33 U.S.C.A. § 908(c)(21). It is thus argued that 'schedule losses' apply only to 'accidental' injuries or injuries resulting from 'trauma' and do not apply to injuries resulting from occupational disease. It is also asserted that this court, in stating that 'schedule losses' were bottomed on a concept of impairment of wage-earning capacity, Iacone v. Cardillo, 2 Cir., 1953, 208 F.2d 696, impliedly held that affirmative proof of impairment must be introduced by claimant, even in such cases. Neither argument is persuasive. Nowhere in the statute did the Congress limit the applicability of the schedules to injuries resulting from accident or trauma. Little support can be gleaned from the state statutes in effect at the time the Federal Act was passed, for they differed markedly in some respects from the Federal Act. Thus, in 1927, when the Longshoremen's Act was passed, the New York Workmen's Compensation statute, which was used in planning the format of the Federal Act, did not treat recovery for occupational disease with the breadth of view which the Congress later chose to adopt. It is apparent that the Congress, in defining 'injury' under the Act to include 'occupational disease' as well as 'accidental injury,' intended that the two should be treated similarly, unless otherwise specified in the Act, or unless the nature of the two kinds of 'injury' rendered it impracticable to accord similar treatment to each. Nothing in the nature of the 'schedule losses' specified in 33 U.S.C.A. § 908(c) indicates a necessity to treat loss of hearing resulting from accident any differently from loss of hearing resulting from occupational disease. Indeed, were we to hold otherwise, we would be sanctioning a rule under which identical impairments would be given disparate treatment under the Act, viz., one injury would be compensable as a schedule loss if it resulted from accident and the other would not, simply because it arose out of the insidious effects of an occupational disease. This could hardly have been the intention of the Congress.
 
 
 37
 Having concluded that the statutory schedules apply to 'injury' resulting from occupational disease, it remains for us to point out only that, in the case of schedule losses, the Congress has determined that a loss of wage-earning capacity and its extent are conclusively established when one of the enumerated physical impairments is proven to have arisen out of the employment. The situation presented in the Iacone case, supra, is distinguishable. In that case, the use of the eye was lost long prior to the industrial accident upon which the claim was founded, and, consequently, we stated that 'Industrially, claimant lost nothing by the second injury.' In effect we held that the Congress did not contemplate compensation for the loss of a previously sightless eye when it made provision for scheduled awards in 33 U.S.C.A. § 908(c) (5). In the cases presently before us, there was ample evidence to sustain the Deputy Commissioner's findings of permanent binaural impairment of hearing arising naturally out of the claimants' employment and, consequently, the schedule loss formula provided for in the statute was properly invoked in accordance with the apparent Congressional intent conclusively to fix compensation for permanent partial loss of hearing.
 
 Allocation of Liability
 
 38
 The most difficult question presented by these cases is not that of a claimant's right to recover but rather that of determining upon whom shall devolve the burden of paying the tariff imposed by this socially desirable legislation. The nature of occupational diseases and the dearth of medical certainty with respect to the time that is required for them to develop and the permanence and extent of the resultant injurious effects at different stages of the diseases' evolution, make it exceedingly difficult, if not practically impossible, to correlate the progression of the disease with specific points in time or specific industrial experiences. Realizing this difficulty, and in the absence of a specific legislative provision indicating an appropriate method for allocating liability, the various Deputy Commissioners sought a formula which they believed would be administratively feasible and would at the same time effectuate the beneficial purposes of the Act. The method selected was that used in these three cases, namely, holding 'the employer in the last employment during which the injurious and cumulative effects of the occupational exposure manifested themselves' principally liable, and holding 'the carrier or carriers covering the employer during such last employment jointly, severally and equally responsible for the discharge of the duties and obligations of the last employer in respect of such liability.' Until these cases arose, carriers in similar situations had consented to the application of this formula. It is clear, however, that previous administrative practice has, at most, persuasive effect, and that acquiescence in similar cases does not preclude questioning the practice at this time. Moreover, the record discloses that several of the carriers involved here never before consented to the use of this method for allocating liability.
 
 
 39
 Thus appellants suggest various formulae which, collectively, include almost every alternative approach to the solution of the problem, running the gamut from full scale medical inquiry into all prior employments which may have fostered the development of the disease and attempting to apportion liability to each employer along the line, and to the carriers covering such employers during the periods in which claimants were so exposed, to holding the employer during the employment in which the injurious effects manifested themselves and the carrier with whom the employer carried his insurance at that time. Each of the suggested alternatives has advantages and disadvantages and, in view of the present state of medical knowledge relating to these diseases and the administrative obstacles confronting those charged with the initial responsibility for passing upon these claims, it would be sheer folly to seek or expect to discover a formula devoid of any possibility of inequity or seeming injustice.
 
 
 40
 But our problem is not one of choice but rather, primarily, one of legislative interpretation and in the absence of any reference in the statute to the precise point, we must examine the legislative history for such light as it may afford. That the Congress was not unaware of the difficulty that might arise with respect to occupational disease seems clear. During the course of the hearings which preceded the passage of the Act, an employer representative suggested that the Act should contain a provision limiting the proportion of the total award for which a particular employer could be held liable, to the same ratio as the extent of the damage done during the period worked for that employer bore to the total disability. It was acknowledged that, absent such a provision, a 'last employer' would be liable for the full amount recoverable, even if the length of employment was so slight that, medically, the injury would, in all probability, not be attributable to that 'last employment.'[1] Nevertheless, the Congress evidently declined to adopt the suggestion thus proffered; and it would seem a fair inference that the failure to amend was based upon a realization of the difficulties and delays which would inhere in the administration of the Act, were such a provision incorporated into it. Thus we conclude that the Congress intended that the employer during the last employment in which the claimant was exposed to injurious stimuli, prior to the date upon which the claimant became aware of the fact that he was suffering from an occupational disease arising naturally out of his employment, should be liable for the full amount of the award.
 
 
 41
 There remains the question, which carrier or carriers are responsible for the discharge of the duties and obligations of the 'last employer' in respect of his principal liability. Here we are frankly groping in the dark. But the conclusion already arrived at with respect to the liability of the employer may fairly be thought to mark the path to be followed here as well. If administrative ease of handling was a consideration of significance in the formulation of the Act with reference to the liability of the employer, then there is small reason to suppose that it was the intention of the Congress to inject into the determination of carrier liability the very same conjectural and unsatisfactory estimates which would have been involved in attempting to apportion liability among employers. Nor can it be argued with any persuasive effect that the Congress, in charging the 'last employer,' was concluding, as matter of law, that the disability resulted solely, or even primarily, from the exposure during the period of last employment so that it would follow, as a natural consequence, that all carriers insuring the 'liable' employer during the 'last employment' should, in some manner, be required to share responsibility for the employer's liability. There is no basis for attributing so fictional and unrealistic a view to the legislature. Rather, it would seem far more in keeping with the Congressional recognition of the over-riding importance of efficient administration in this area, to conclude that the treatment of carrier liability was intended to be handled in the same manner as employer liability, and that the carrier who last insured the 'liable' employer during claimant's tenure of employment, prior to the date claimant became aware of the the fact that he was suffering from an occupational disease arising naturally out of his employment, should be held responsible for the discharge of the duties and obligations of the 'liable' employer. We so hold.
 
 
 42
 Accordingly, the order entered in connection with the Tropea claim is affirmed and the cases involving the Johansen and Lebowitz claims are remanded to the District Court with directions to modify the respective orders in accordance with the views expressed herein.
 
 
 
 [1]
 Hearing of Committee on the Judiciary of the House of Representatives, on H.R. 9498, 69th Congress, 1st Sess., held April 8, 15, 22, 1926