**JACKSONVILLE SHIPYARDS, INC., Petitioner,**

v.

**DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, Respondents.**

No. 86–3533.

United States Court of Appeals, Eleventh Circuit.

Aug. 10, 1988.

Rehearing and Rehearing In Banc Denied, Sept. 16. 1988.

Taylor, Day, Rio & Mercier, John C. Taylor, Jr., Ada A. Hammond, Jacksonville, Fla., for petitioner.

Office of Workers' Compensation Programs, Marianne Demetral Smith, Sol. of Labor, U.S. Dept. of Labor, Washington, D.C., for respondents.

Bette T. Miller, Rogers, Towers, Bailey, Jones & Gay, Jacksonville, Fla., Janet R. Dunlop, U.S. Dept. of Labor, Washington, D.C., for amicus curiae-Cigna.

*Petition for Rehearing and Suggestion for Rehearing In Banc*

Before TJOFLAT and KRAVITCH, Circuit Judges, and TUTTLE, Senior Circuit Judge.

TJOFLAT, Circuit Judge:

The panel has decided to vacate its earlier opinion and judgment in this case, 842 F.2d 1253, and to substitute the following in its stead.

## I.

William J. Stokes worked in a Jacksonville, Florida shipyard from 1958 until 1976. During that eighteen-year period, the shipyard was owned by three different entities. The third and final owner during the period of Stokes' employment was Jacksonville Shipyards, Inc., the appellant here, which purchased the shipyard in 1965.

Throughout the 1960's, Stokes worked at the shipyard as a sandblaster. In 1971, he began to experience shortness of breath when climbing stairs and ladders. That same year, a chest x-ray was performed which indicated a condition consistent with silicosis, a lung disease that results from exposure to dust and silica. Due to deteriorating health, Stokes finally stopped working at the shipyard in August 1976.

Stokes thereafter filed a permanent total disability claim under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901–950, against Jacksonville Shipyards and his previous employers at the shipyard. Also named in the claim were the insurance carriers who had insured the various employers during the course of Stokes' eighteen-year employment at the shipyard. A hearing was held before an administrative law judge (ALJ) on September 1, 1983. The ALJ found that Stokes was permanently disabled, and assessed full liability for disability compensa-

tion against Jacksonville Shipyards.[1]

■ Jacksonville Shipyards then sought relief under 33 U.S.C. § 908(f) (1982 & Supp.1985). That section provides in pertinent part:

> (1) In any case in which an employee having an existing permanent partial disability suffers injury, the employer shall provide compensation for such disability as is found to be attributable to that injury.... In all ... cases of total permanent injury or of death, found not to be due solely to that injury, of an employee having an existing permanent partial disability, the employer shall provide ... compensation payments or death benefits for one hundred and four weeks only....
>
> (2) After cessation of the payment for the period of weeks provided for herein, the employee or his survivor entitled to benefits shall be paid the remainder of the compensation that would be due out of the special fund established in section 944 of this title.

Thus, when a partially disabled worker becomes totally disabled as a result of a work-related incident, the employer will be liable only for the first 104 weeks of disability compensation; after that, disability compensation is paid from a "special fund" created from payments by employers. In evaluating requests for relief under section 908(f), courts have applied a three-part test developed in *C & P Telephone v. Director, OWCP,* 564 F.2d 503 (D.C.Cir.1977). Under that test, (1) the employee must have had a preexisting, permanent partial disability; (2) this condition must have been manifest to the employer; and (3) the preexisting partial disability must have contributed to the seriousness of the employee's second injury.

Here, the ALJ found that the first two prongs of the *C & P Telephone* test were satisfied: Stokes had a preexisting permanent disability as early as 1971, and that condition had been manifest to Jacksonville Shipyards. The ALJ denied section 908(f) relief, however, because he concluded that the evidence failed to show a "second inju-

ry." The Benefits Review Board affirmed, and Jacksonville Shipyards now appeals.

## II.

We first address the issue of appellate jurisdiction. Under 33 U.S.C. § 921(c) (1982), we have jurisdiction to review final orders of the Benefits Review Board. In this case, the Benefits Review Board affirmed the ALJ's determination on the merits, but vacated that part of the ALJ's order awarding attorney's fees and remanded the case to the ALJ for further consideration of that award.

■ In *McQurter v. City of Atlanta,* 724 F.2d 881, 882 (11th Cir.1984), we held that "[w]hen attorney's fees are similar to costs or collateral to an action, a lack of determination as to the amount does not preclude the issuance of a final, appealable judgment on the merits." (Citations omitted; quoting *Holmes v. J. Ray McDermott & Co.,* 682 F.2d 1143 (5th Cir.1982), *cert. denied,* 459 U.S. 1107, 103 S.Ct. 732, 74 L.Ed.2d 956 (1983)). The fees in this case were awarded under 33 U.S.C. § 928 (1982), which provides for the awarding of a reasonable fee "in addition to the award of compensation." We find that the fee award in this case was collateral to the main claim, and that we are therefore presented with an appealable final order.

■ Turning to the merits of the appeal, we affirm. The ALJ recognized that the "second injury" prerequisite to section 908(f) relief may be satisfied by showing a work-related aggravation of a preexisting disability. *See C & P Telephone,* 564 F.2d at 514. The ALJ correctly emphasized, however, that there must be a showing of actual aggravation: when a total disability results from nothing more than the natural progression of a preexisting partial disability, the total disability cannot be considered a "second injury." Based on the evidence before him, the ALJ concluded that Jacksonville Shipyards had failed to show an actual aggravation of the preexisting disability. Because the ALJ's findings are

---

1. Jacksonville Shipyards stipulated that it was responsible for the total permanent disability.

supported by substantial evidence in the record considered as a whole, *see Geddes v. Benefits Review Bd.*, 735 F.2d 1412, 1415 (D.C.Cir.1984), we must affirm.

■ Jacksonville Shipyards seeks to avoid this result by way of an argument based on the so-called "last injurious exposure" rule for allocating liability in employment disability cases. In order to explain why we reject this argument, we must further examine the peculiar posture of the case before us.

From the time it purchased the shipyard in 1965 until December 31, 1975, Jacksonville Shipyards was insured by two successive insurance carriers. On January 1, 1976, seven months before Stokes stopped working at the shipyard, Jacksonville Shipyards became self-insured. When an employer is assessed liability for a work related disability, as Jacksonville Shipyards was in this case, and that employer was insured by a number of successive insurers over the period of the claimant's employment, the question naturally arises as to which insurer should bear responsibility. Here, there would be three insurers potentially involved in such a dispute: the two former carriers and Jacksonville Shipyards itself as a self-insurer.

In resolving such disputes among the insurers of an employer against which liability has been assessed, courts have applied the so-called "last injurious exposure" rule. *See Travelers Ins. Co. v. Cardillo*, 225 F.2d 137, 145 (2d Cir.), *cert. denied*, 350 U.S. 913, 76 S.Ct. 196, 100 L.Ed. 800 (1955). At the time liability was assessed against Jacksonville Shipyards in its capacity as Stokes' employer, it stipulated that it was also the responsible insurer under the *Cardillo* rule. The ALJ accepted the stipulation. Jacksonville Shipyards now argues that because it is the responsible insurer under the "last injurious exposure" rule, it is entitled to section 908(f) relief. Jacksonville Shipyards' argument is that exposure sufficient to trigger the *Cardillo* allocation

rule constitutes a "second injury" for purposes of section 908(f). We cannot agree.

The *Cardillo* rule, as it pertains to this case, is a rule for allocating responsibility among insurers for a particular injury.[2] As such, it is simply not relevant to the "second injury" inquiry required when an employer seeks section 908(f) relief. In this case, the *Cardillo* rule came into play only insofar as it was used to determine which of the three insurers would be responsible for the single injury at issue—Stokes' total permanent disability. This determination is wholly unrelated to the question whether Jacksonville Shipyards, as the employer against which liability has been assessed, has carried its burden of showing a "second injury" for purposes of section 908(f). Because Jacksonville Shipyards did not carry that burden, the ruling of the Benefits Review Board is

AFFIRMED.

---

**2.** Apart from its use in this manner, the rule is also used to determine *employer* liability in the first instance when successive employers have exposed the employee to noxious substances. In such case, the rule operates in a similar manner: it is used to determine which of several successive employers will be responsible for the particular injury at issue.