USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit
 ____________________

No. 98-2010

 BATH IRON WORKS, ET AL.,

 Petitioners,

 v.

 HAROLD J. BROWN, JR., ET AL.,
 
 Respondents.
 
 ____________________
 
 PETITION FOR REVIEW OF A DECISION OF THE BENEFITS REVIEW BOARD
 ____________________

 Before

 Stahl, Circuit Judge,
 John R. Gibson, Senior Circuit Judge,
 and Lynch, Circuit Judge.
 
 ____________________

 Kevin M. Gillis, with whom Troubh, Heisler & Piampiano, P.A.
was on brief, for petitioners.
 G. William Higbee, with whom McTeague, Higbee, MacAdam, Case,
Cohen & Whitney, PA was on brief, for respondent Harold J. Brown.
 Stephen Hessert, with whom Norman, Hanson & DeTroy was on
brief, for respondent Liberty Mutual Insurance Company.
 Laura J. Stomski, with whom Henry L. Solano, Solicitor of
Labor, Carol A. De Deo, Associate Solicitor for Employee Benefits,
and Samuel J. Oshinsky, Counsel for Longshore, were on brief, for
respondent Director, Office of Workers' Compensation Programs, U.S.
Department of Labor.

 
 ____________________

 October 8, 1999
 ____________________ LYNCH, Circuit Judge. Harold J. Brown, Jr., now nearly 78
years old, worked at shipbuilding facilities owned by the Bath Iron
Works (BIW) for 43 years, from 1941 to 1984. Until 1978 he worked
at the BIW shipyard in Bath, Maine, a facility covered by the
Longshore and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C.
 901 et seq. From 1978 to 1984, he worked at BIW's Hardings plant,
a facility the Benefits Review Board (BRB) determined was not
covered by the Act. 
 Brown obtained an award of benefits under the Act for hearing
loss, an occupational disease resulting from years of exposure to
loud noises. He received a lump sum payment in 1986; his present
interest in this case is in continuing health coverage for his
disability, and more specifically, that BIW's insurer pay for
hearing aids as needed. BIW has two insurers involved: Commercial
Union Insurance Companies, which provided coverage from January 1,
1963 to February 28, 1981, and Liberty Mutual Insurance Company,
which provided coverage from March 1, 1981 to August 31, 1986.
Liberty Mutual paid the lump sum award and looks to Commercial
Union for reimbursement. Commercial Union, to its credit, has
informed us that it will reimburse Liberty Mutual if the order
awarding benefits is upheld. This petition for review by BIW and
Commercial Union concerns whether Brown should have received
benefits under the Act.

 I
 This case has consumed more than 16 years. The original claim
for compensation was filed on July 22, 1983, and the matter has
been before three different Administrative Law Judges (ALJs) and
has been to the BRB four times. The basic attack mounted by
Commercial Union and BIW is that the second ALJ found, on
substantial evidence, that Brown failed to produce credible
evidence of any hearing loss during the covered period at the
shipyard and that the BRB was not free to disturb that ruling.
Brown disagrees with the second ALJ's conclusion. He argues that
the first ALJ found, on substantial evidence, both exposure to loud
noise and hearing loss during the covered period and that the BRB's
order should be affirmed. Commercial Union agrees that there was
such exposure and says that while there was substantial evidence to
support a finding of hearing loss during the covered period, no
such finding was in fact made and that therefore the second ALJ's
finding was the controlling one.
 This court reviews the BRB's decision on legal issues de novo
and determines whether the Board adhered to the "substantial
evidence" standard when it reviewed the ALJ's factual findings. See
Barker v. United States Dep't of Labor, 138 F.3d 431, 434 (1st Cir.
1998).
 We decide this case on the grounds argued by Brown: the first
ALJ found that Brown had adduced evidence sufficient to make out a
prima facie case as to his hearing loss during his employment at
the shipyard and, consequently, to invoke the presumption of
liability in 33 U.S.C. 920(a). The employer did not rebut the
presumption, and the BRB correctly determined that substantial
evidence supported the first ALJ's determination. An explanation of
our reasoning benefits from a description, shortened and focused,
of the protracted prior proceedings.

 II
 On July 22, 1983, Brown filed a Claim for Compensation with
the Office of Workers' Compensation, U.S. Department of Labor.
Since Brown and BIW could not agree on a settlement, the dispute
went before an ALJ of the Department of Labor. On June 11, 1986,
after the only evidentiary hearing held in this matter, ALJ Glennon
awarded Brown benefits for a 39.6% binaural hearing loss based on
expert testimony and audiograms taken in 1955, 1967, and 1983. The
ALJ also held that the Hardings facility was a covered situs under
the Act and that Liberty Mutual, as the carrier at the time of the
last exposure, was liable for payment of the benefits. Liberty
Mutual appealed this decision to the BRB. On July 31, 1989, the BRB
reversed the ALJ. The Board determined that the Hardings facility
was not a covered situs under the Act and, therefore, the date of
last covered exposure was April 17, 1978, when Brown last worked at
the Bath facility. Consequently, the carrier responsible for
Brown's benefits was Commercial Union. The Board also decided that
"[a]ggravation of a covered injury occurring after termination of
covered longshore employment is not compensable under the Act,"
under Leach v. Thompson's Dairy, Inc., 13 Ben. Rev. Bd. Serv. (MB)
231 (1981). The BRB "remand[ed] the case for the ALJ to determine
the extent of claimant's work-related hearing loss from 1941 until
claimant transferred to the Hardings facility."
 On February 21, 1990, a second ALJ (Shatz) found that the only
reliable audiogram was conducted in 1983 (finding the audiograms
done in 1955 and 1967 were unreliable), and that the 1983 audiogram
could not be relied upon as an indicator of Brown's hearing loss in
1978 since Brown was exposed to loud noises at the Hardings plant
after that date. Therefore, the second ALJ concluded, Brown "ha[d]
not sustained his burden of proof by credible evidence that he
sustained a hearing loss prior to being transferred in 1978 from
the Employer's shipyard to the Hardings facility." As a result, the
ALJ denied Brown's claim. Brown appealed ALJ Shatz's ruling and, on
June 16, 1992, the BRB reversed. Relying on cases it had decided
since the first appeal, and contrary to its earlier holding that
aggravation of a covered injury at a later non-covered site is not
compensable, the Board held that Brown, as a matter of law, was
entitled to compensation for his hearing loss as measured in 1983,
because "the last covered employer is liable for an occupational
disease regardless of subsequent exposure in non-covered
employment." Brown's claim was re-instated. Upon reconsideration,
the Board reaffirmed this holding. 
 The BRB remanded the case to a third ALJ (Karst) to determine
Brown's average applicable weekly wage. This the ALJ did on July
21, 1997, and BIW and Commercial Union appealed again to the BRB,
which, on August 13, 1998, upheld the ALJ in all respects.

 III
 The first ALJ had to decide the initial question of
compensability and he decided it in Brown's favor. In order for an
injury to be covered by the Act, the claimant must initially make
out a prima facie case. That is, a claimant "must at least allege
an injury that arose in the course of employment as well as out of
employment." U.S. Indus./Fed. Sheet Metal, Inc. v. Director, OWCP,
455 U.S. 608, 615 (1982); see also Susoeff v. San Francisco
Stevedoring Co., 19 Ben. Rev. Bd. Serv. (MB) 149, 151 (1986)
(claimant must make a prima facie showing that he or she "sustained
physical harm and that conditions existed at work which could have
caused the harm"); cf. Ramey v. Stevedoring Servs. of Am., 134 F.3d
954, 959 (9th Cir. 1998) (relying on Susoeff).
 There was substantial evidence to support the finding of
compensability, as Commercial Union concedes. Brown worked at the
shipyard as a shipfitter, surrounded by the din of chipping,
riveting, sirens, and hammering. He testified that he noticed loss
of hearing years earlier, during the period he worked at the
shipyard. That testimony was not rebutted. He had three audiograms
done, two in 1955 and one in 1967. Each showed that he suffered
some hearing loss, although, oddly, the later one showed less
hearing loss than the earlier ones. Brown's testimony before Judge
Glennon indicates that an audiogram was done in 1967 or before,
after Brown noticed hearing loss. Brown testified that, as a result
of a ringing in his ears he went to First Aid at the shipyard and
had a hearing test done. He was told by the shipyard's medical
department that the hearing loss was a hazard of the job and not
much could be done about it. The medical testimony before the first
ALJ also supports the conclusion that Brown had work-related
hearing loss as a result of his employment at the Bath shipyard.
This is sufficient to establish a prima facie case under the Act.
 Once Brown made out his prima facie case, there was a
presumption of liability. See 33 U.S.C. 920(a) ("In any
proceeding for the enforcement of a claim for compensation under
this chapter it shall be presumed, in the absence of substantial
evidence to the contrary -- (a) That the claimant comes within the
provisions of this chapter.").
 BIW could have rebutted this presumption in Brown's favor "by
showing that exposure to injurious stimuli did not cause the harm"
or "that [Brown] was exposed to injurious stimuli while performing
work covered under the [LHWCA] for a subsequent employer." Avondale
Indus. Inc. v. Director, OWCP, 977 F.2d 186, 190 (5th Cir. 1992)
(quoting Susoeff, 19 Ben. Rev. Bd. Serv. at 151) (internal
quotation marks omitted); see also General Ship Serv. v. Director,
OWCP, 938 F.2d 960, 961 (9th Cir. 1991) (applying Susoeff). BIW had
to produce "substantial evidence" to support such a showing. See
Sprague v. Director, OWCP, 688 F.2d 862, 865 (1st Cir. 1982)
(quoting 920(a)). "Substantial evidence" means "such relevant
evidence as a reasonable mind might accept as adequate to support
a conclusion." Id. (citations and internal quotation marks
omitted). If the presumption had been rebutted by BIW, it would
have fallen out of the case, and Brown would have had to establish
his burden based on the record as a whole. See Del Vecchio v.
Bowers, 296 U.S. 280, 286-87 (1935); accord Sprague, 688 F.2d at
865. If, based on the record as a whole, the evidence had been
evenly balanced between Brown and BIW, Brown would have lost. See
Director, OWCP v. Greenwich Collieries, 512 U.S. 267, 281 (1994).
 Here, however, the presumption was not rebutted, and so Brown
was properly awarded compensation. See Bath Iron Works Corp. v.
Director, OWCP, 109 F.3d 53, 56 (1st Cir. 1997). The first ALJ
ruled (incorrectly, the BRB later said) that both of the BIW
facilities where Brown worked were covered facilities; thus, his
focus was not primarily on whether the injury was caused or
aggravated at the shipyard or at the Hardings facility or both. But
his opinion did determine both implicitly and explicitly that there
was compensability for the period of employment at the shipyard.
The ALJ viewed both insurers as potentially liable and visited the
liability on Liberty Mutual because it was the last carrier (during
the Hardings facility employment) and had not shown that there was
no exposure to noise at Hardings.
 The BRB understood the issues of compensability and overall
liability of the shipyard to have already been resolved: "[I]t is
undisputed that claimant's hearing loss is related to occupational
noise exposure during claimant's employment . . . from 1941 to
1984." Indeed, the issue remanded to the second ALJ was to
determine the extent of liability by determining "the extent of
claimant's work-related hearing loss from 1941 until claimant
transferred to the Hardings facility." The second ALJ did not have
the issue of compensability before him and, unsurprisingly, his
opinion does not even refer to 920(a). Thus, the issue of
compensability was decided in Brown's favor and against the
shipyard by the first ALJ, was affirmed by the BRB, is supported by
substantial evidence, and is affirmed here.
 There is one other party to this case and one other argument
raised. The Director, Office of Workers' Compensation Programs,
U.S. Department of Labor, argues that this case should turn on an
extension of the well accepted "last employer rule." This extension
has been called the "last covered employer" or "last maritime
employer" rule. See Junius C. McElveen, Jr. & Lawrence P. Postol,
Compensating Occupational Disease Victims Under the Longshoremen's
and Harbor Workers' Compensation Act, 32 Am. U. L. Rev. 717, 761-62
(1983). 
 The original "last employer" rule stems from the 1955 Second
Circuit decision in Travelers Insurance Co. v. Cardillo, 225 F.2d
137 (2d Cir. 1955), and is concerned with allocation of liability
among employers and not with the question of compensability of the
claimant. In Cardillo, the court noted that:
 The most difficult question presented by these cases is not
 that of a claimant's right to recover but rather that of
 determining upon whom shall devolve the burden of paying the
 tariff imposed by this socially desirable legislation. The
 nature of occupational diseases and the dearth of medical
 certainty with respect to the time that is required for them
 to develop and the permanence and extent of the resultant
 injurious effects at different stages of the diseases'
 evolution, make it exceedingly difficult, if not practically
 impossible, to correlate the progression of the disease with
 specific points in time or specific industrial experiences.

Id. at 144. Since the Act does not provide a method for allocating
liability, the court fashioned the last employer rule in order to
do so. The rule states that: 
 the employer during the last employment in which the claimant
 was exposed to injurious stimuli, prior to the date upon which
 the claimant became aware of the fact that he was suffering
 from an occupational disease arising naturally out of his
 employment, [is] liable for the full amount of the award.

Id. at 145. 
 This rule was both consistent with congressional intent and
provided for administrative ease. The context in which the rule
arises is where it has already been determined that the claimant
has a right to recover, the issue is one of allocation, and the
last employer covered by the Act is the last employer. This court
utilized a version of a last employer rule in Liberty Mutual
Insurance Co. v. Commercial Union Insurance Co., 978 F.2d 750, 756
(1st Cir. 1992) (holding date of disability rather than date of
awareness of condition is key date for last employer rule). 
 The last employer rule fashioned by the Cardillo court is
based on the assumption that "all employers will be the last
employer a proportionate share of the time." Cordero v. Triple A
Mach. Shop, 580 F.2d 1331, 1336 (9th Cir. 1978). A more basic
premise, unstated in Cardillo, is that, under the last employer
rule, the employer assumes the risk when he hires an employee. This
is similar to the torts rule that a tortfeasor takes its "victims"
as it finds them. Consistent with this torts principle, one
commentary notes that, at least with regard to some types of
occupational injuries, an employer could discover an employee's
existing work related injury or illness "and could avoid or reduce
liability by protecting the employee from further exposure."
McElveen & Postol, supra, at 763.
 The Director wants the courts to extend this last employer
rule to impose liability on the last covered maritime employer
where there is later exposure at a non-covered employer, as here.
The "last maritime employer rule," unlike the "last employer rule,"
is driven by the fact that there is no jurisdiction over the last
employer because the last employer is not covered by the Act. See
id. at 762. Critics, however, have pointed out that such an
extension is contrary to the rationale for the last employer rule:
a last maritime or covered employer rule "undercut[s] the basic
rationale of the last employer rule, that each employer will be the
last employer a proportionate share of the time." McElveen &
Postol, supra, at 763. Furthermore, since the last maritime or
covered employer rule holds covered employers liable for exposures
that took place after their liability otherwise ended, "employers
are precluded from limiting their liability by adjusting their
conduct." Id. There is a difference between holding employers (and
their insurers) liable for injuries that took place before an
employee was hired and for those that took place after an employee
left covered employment.
 Nonetheless, there are policy arguments to be made to support
such an extension of an allocation rule in those situations where,
as here, the employee worked for the same employer throughout and
was simply transferred by the employer from a covered facility,
where he was exposed, to a non-covered facility. Otherwise, an
employer could seek to manipulate the system by transferring an
exposed employee from a covered to a non-covered facility. See
Fulks v. Avondale Shipyards, Inc., 10 Ben. Rev. Bd. Serv. (MB) 340,
345 (1979), aff'd, 637 F.2d 1008 (5th Cir. 1981); cf. Todd
Shipyards Corp. v. Black, 717 F.2d 1280, 1285 (9th Cir. 1983).
 This issue does not need to be resolved because we have upheld
the finding of compensability against BIW arising out of Brown's
1941 to 1978 employment at the shipyard, and Commercial Union
conceded at oral argument that, if Brown was entitled to
compensation under the Act, the extent of such compensation could
be based on the 1983 audiogram. Consequently, there is no need to
either decide a last maritime or covered employer issue or to
decide what deference, if any, we owe to the Director's views in
this case. Cf. Neely v. Benefits Rev. Bd., 139 F.3d 276, 281 (1st
Cir. 1998); Liberty Mut. Ins. Co., 978 F.2d at 757.
 We sustain the order of the BRB and deny the petition. Costs
are awarded to Brown.