# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

NEWPORT NEWS SHIPBUILDING AND
DRY DOCK COMPANY,

*Petitioner,*

v.

MARIE STILLEY, Widow of Lyman
Stilley; DIRECTOR, OFFICE OF
WORKERS' COMPENSATION PROGRAMS,
UNITED STATES DEPARTMENT OF
LABOR,

*Respondents.*

No. 00-1155

On Petition for Review of an Order
of the Benefits Review Board.
(99-456, 99-456A)

Argued: November 1, 2000

Decided: March 12, 2001

Before MICHAEL, MOTZ, and KING, Circuit Judges.

---

Petition for review denied by published opinion. Judge Michael wrote
the opinion, in which Judge Motz and Judge King joined.

---

## COUNSEL

**ARGUED:** Lawrence Philip Postol, SEYFARTH, SHAW, FAIR-
WEATHER & GERALDSON, Washington, D.C., for Petitioner.
Andrew David Auerbach, UNITED STATES DEPARTMENT OF

LABOR, Washington, D.C., for Respondent Director; Gary Richard West, PATTEN, WORNOM, HATTEN & DIAMONSTEIN, Newport News, Virginia, for Respondent Stilley. **ON BRIEF:** Henry L. Solano, Solicitor of Labor, Carol A. De Deo, Associate Solicitor, Mark Reinhalter, Senior Attorney, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Respondent Director.

**OPINION**

MICHAEL, Circuit Judge:

Lyman Stilley's disability and (in part) his death were caused by mesothelioma, an asbestos-related lung disease. His widow was awarded benefits under the Longshore and Harbor Workers' Compensation Act (LHWCA) against Newport News Shipbuilding and Dry Dock Company (Newport News) because of Stilley's exposure to injurious doses of asbestos as a company employee. Newport News disclaimed liability because Stilley had also been exposed to asbestos at subsequent, non-maritime employment with the National Aeronautics and Space Administration (NASA). The ALJ nevertheless assigned full LHWCA liability to Newport News under the "last maritime employer rule," and the Benefits Review Board affirmed. Under this rule the last employer covered by the LHWCA who causes or contributes to an occupational injury is fully liable for compensation benefits. Newport News petitions for review, asking that we reject or substantially modify the last maritime employer rule. Because the present rule is consistent with the Act and passes constitutional muster, we deny the employer's petition.

I.

Lyman Stilley worked for Newport News as an electrician's helper for about nine months in the 1950s. During his employment at Newport News, Stilley was exposed to airborne asbestos dust and fibers in sufficient quantity and duration to cause asbestos-related lung disease. After leaving Newport News, Stilley worked for nearly thirty years (until 1987) as an electronics technician at NASA, where he was exposed to asbestos for sustained periods, again in sufficient

quantity to cause lung disease. In 1994 Stilley was diagnosed with mesothelioma, an asbestos-related lung disease. After the diagnosis Stilley had two options for seeking workers' compensation benefits. He could file for benefits against Newport News under the LHWCA or he could seek benefits against NASA under the Federal Employee Compensation Act (FECA).

Stilley chose to file for disability benefits against Newport News under the LHWCA. He died shortly thereafter, on May 14, 1996, in part because of mesothelioma. After Stilley's death his widow pursued the basic compensation claim and also filed for death benefits. In the LHWCA proceedings Newport News stipulated that while Stilley worked for the company he was exposed to asbestos in sufficient quantity and duration to cause mesothelioma, and the ALJ awarded benefits to the widow. Newport News argued that it should not be liable for the benefits because Stilley was exposed to asbestos at his later employment with NASA. Both the ALJ at the hearing and the Board on appeal applied the "last maritime employer rule" to hold that Newport News was fully liable because it was the last maritime employer to expose Stilley to asbestos in sufficient quantity and duration to cause his disease. Newport News now petitions for review of the Board's decision, arguing that the last maritime employer rule is unreasonable and unconstitutional.

II.

A.

Whether the Board erred in affirming the use of the last maritime employer rule is a question of law. We accord no deference to the Board's legal interpretation of the LHWCA because the Board does not serve a policy making role. *See Norfolk Shipbuilding & Drydock Corp. v. Hord*, 193 F.3d 797, 800 (4th Cir. 1999). However, "[a]bsent a clear congressional intent to the contrary, we afford deference to a reasonable construction of the Act by the Director because of his policy-making authority with regard to the Act." *Universal Mar. Corp. v. Moore*, 126 F.3d 256, 268 (4th Cir. 1997). The Director has concluded that the last maritime employer rule should be applied in the administration of claims under the LHWCA. Newport News does not argue that application of the last maritime employer rule violates

clear congressional intent. Rather, Newport News argues that the Act does not reasonably allow for application of the rule. Because the Director's longstanding administrative construction appears to be reasonable, we must disagree with the company.

B.

The LHWCA establishes a workers' compensation system for workers injured or killed while employed on the navigable waters of the United States, including any adjoining pier or land areas used to load, unload, build, or repair ships. *See* 33 U.S.C. § 903(a). "[T]he general policy of the Act [is] to encourage the prompt and efficient administration of compensation claims." *Rodriguez v. Compass Shipping Co.*, 451 U.S. 596, 612 (1981). In keeping with this policy, the Director has adopted the last maritime employer rule, which is under challenge in this proceeding. Because the last *maritime* employer rule is an extension of the last employer rule, we begin with a discussion of the last employer rule.

A number of circuits have affirmed the use of the last employer rule to govern the assignment of LHWCA liability when there are multiple employers or insurance carriers in occupational disease cases. *See Norfolk Shipbuilding & Drydock Corp. v. Faulk*, 228 F.3d 378, 384 (4th Cir. 2000); *Liberty Mut. Ins. Co. v. Commercial Union Ins. Co.*, 978 F.2d 750, 752 (1st Cir. 1992); *Avondale Indus., Inc. v. Dir., OWCP*, 977 F.2d 186, 190 (5th Cir. 1992); *Port of Portland v. Dir., OWCP*, 932 F.2d 836, 840 (9th Cir. 1991); *Jacksonville Shipyards, Inc. v. Dir., OWCP*, 851 F.2d 1314, 1317 n.2 (11th Cir. 1988); *Travelers Ins. Co. v. Cardillo*, 225 F.2d 137, 145 (2d Cir. 1955). The last employer rule is this: "the employer during the last employment in which the claimant was exposed to injurious stimuli, prior to the date upon which the claimant became aware of the fact that he was suffering from an occupation disease . . . [is] liable for the full amount of the [LHWCA] award." *Cardillo*, 225 F.2d at 145. Let us assume, for example, that a claimant, who is disabled by asbestos-related lung disease, worked for maritime employer A for thirty *years* installing asbestos and next worked for maritime employer B for thirty *days* where he also installed asbestos. Employer B is fully liable for the claimant's LHWCA benefits if the claimant did not learn of his disease until after he began working for employer B. The last employer

rule therefore imposes full liability on the final maritime employer even though prior maritime employers might have contributed to the claimant's disease or injury.

When the Second Circuit endorsed the last employer rule nearly fifty years ago in *Cardillo*, the court looked to one of Congress's overriding purposes in establishing a workers' compensation system for longshoremen: the prompt and simplified processing of claims. *See Cardillo*, 225 F.2d at 145. Because longshoremen typically work for numerous employers over the course of a career, allowing employers to apportion liability would greatly complicate the claims process. Under an apportionment scheme many benefit awards would be substantially delayed as employers resorted to expert testimony and scientific evidence in an effort to prove that other employers should share a percentage of liability. In the face of this prospect the congressional goal of streamlined claims administration carried the day, and the last employer rule was approved.

The last employer rule for LHWCA liability does not take into account a case like Lyman Stilley's. Newport News is not contending that it should be excused from liability because of the conduct of a subsequent maritime (LHWCA-covered) employer. Rather, Newport News is contending that it should be excused because of the conduct of a subsequent, *non-maritime* employer. The question, therefore, is whether the LHWCA reasonably allows for holding the last maritime employer fully liable for a claimant's injury even though a subsequent, non-maritime employer also contributed to the injury. The "last *maritime* employer" rule holds the maritime employer fully liable in such circumstances. The one circuit to squarely consider the question held that the LHWCA totally supports application of the last maritime employer rule. *See Todd Shipyards v. Black*, 717 F.2d 1280, 1286-87 (9th Cir. 1983). *But cf. Bath Iron Works v. Brown*, 194 F.3d 1, 7 (1st Cir. 1999) (criticizing the last maritime employer rule in dicta).

The last *maritime* employer rule is justified by the same congressional purpose that brought about the last employer rule, specifically, the prompt and simplified processing of compensation claims. If we were to reject the last maritime employer rule, the potential problems that prompted the last employer rule decades ago would now ripen into real ones. LHWCA benefit awards would be delayed in occupa-

tional disease claims while maritime employers attempted to prove that subsequent, non-maritime employers were responsible for a percentage of the liability. Indeed, attempting to apportion liability would present difficult problems of proof for both parties, the employer and the injured worker. These problems would be particularly acute in cases of asbestos-related disease, which often develops over a long latency period. As one of Newport News's medical experts in this case acknowledged, "In patients with multiple exposures, it is not possible by historical means to ascertain which exposure resulted in the mesothelioma." We agree with the Director that rejection of the last maritime employer rule would bring intractable problems to claims administration. Without the rule the claims process would surely become more complicated, protracted, and expensive.

Newport News does not mount any serious challenge to the Director's case for simplified claims administration. Instead, the company devotes much of its brief to pressing the argument that the last maritime employer rule is inequitable.

Newport News begins by claiming that the last *maritime* employer rule "takes away the fundamental fairness of the last employer rule." Decisions subsequent to *Cardillo* have suggested that while the last employer rule is rather arbitrary, it is fair because "all [maritime] employers will be the last employer a proportional share of the time." *Cordero v. Triple A Mach. Shop*, 580 F.2d 1331, 1336 (9th Cir. 1978). If this is borne out in practice, the rule would result in an equitable distribution of LHWCA liability over the long run. Newport News points out that this same logic cannot be applied to the last *maritime* employer rule. Under this rule the subsequent, non-maritime employer will never be the last employer for purposes of LHWCA liability. Newport News therefore argues that the last maritime employer rule unfairly holds maritime employers fully liable for occupational disease caused in part by later, non-maritime employers. It argues that because of this unfairness, the last employer should be fully responsible for the injury, thereby relieving the prior maritime employers of LHWCA liability. As a general matter, this argument is unconvincing because it hinges on the unsubstantiated proposition that claimants exposed to injurious stimuli while working first for LHWCA-covered employers and later for non-covered employers

usually file claims only under the LHWCA. If a claimant was also exposed at subsequent, non-maritime employment, that claimant might well pursue state or FECA benefits first. (FECA and LHWCA generally provide equal compensation benefits to claimants in equal pay categories. *Compare* 33 U.S.C. § 908 *with* 5 U.S.C. §§ 8105-8107.) If the claimant sought state or FECA benefits and later decided to file a LHWCA claim, the earlier maritime employer would receive a credit for any state or FECA award. *See* 33 U.S.C. § 903(e). Accordingly, any inequity to maritime employers under the last maritime employer rule only arises when the claimant seeks a remedy first under the LHWCA.

Newport News anticipates this point and suggests that we modify the last maritime employer rule in one of two ways. The company suggests that either (1) a claimant should not be allowed to pursue LHWCA benefits if he has a compensation remedy against his subsequent, non-maritime employer or (2) a claimant should be required to proceed first against the subsequent employer. The first proposal would hold the last employer, one covered by some other compensation system, solely liable for the claimant's injury. This proposal is contrary to the express requirements of the LHWCA. It overlooks the simple detail that when an employee suffers a compensable injury on a maritime job, he is entitled to benefits under the LHWCA. *See* 33 U.S.C. § 903(a). Nothing in the Act limits the injured worker to his remedy under some other system that covers his subsequent, non-maritime employment. Moreover, limiting the employee to his chances under some other scheme is inconsistent with the LHWCA's goal of adequate compensation for longshoremen. State workers' compensation programs vary widely with respect to benefit levels. *See* U.S. Chamber of Commerce, *Analysis of Workers' Compensation Laws* (1997). Thus, under Newport News's proposal, a claimant could be denied compensation under the LHWCA and left to accept lower benefits under a state workers' compensation scheme. Because the "dominant intent of Congress [in enacting the LHWCA was] to help longshoremen," a claimant should not be denied compensation under the LHWCA simply because he is entitled to some relief under an alternative scheme. *Reed v. The Yaka*, 373 U.S. 410, 415 (1963).

Newport News's second proposal — that claimants should be forced to seek benefits against the subsequent employer before filing

for LHWCA benefits — must also be rejected. Such a rule would certainly benefit maritime employers because they are entitled to a credit under the LHWCA for any workers' compensation benefits paid to the claimant under any other system. *See* 33 U.S.C. § 903(e). The company's second proposal would have some advantages. Forcing injured workers to pursue benefits from subsequent, non-maritime employers first would result in some rough distribution of liability. And, because of the LHWCA's credit provision, the claimant would receive benefits that totaled those available under the LHWCA. Still, nothing in the Act requires an injured worker to pursue other compensation remedies first. In addition, such a rule would be sure to generate disputes in LHWCA claims proceedings over whether a claimant might have an alternative remedy against a subsequent employer. This result would frustrate the LHWCA's overriding purpose of providing a prompt and uncomplicated claims process.

Newport News also argues that the last maritime employer rule is inequitable because it makes maritime employers liable for exposure caused by subsequent employers. This argument is flawed. The last maritime employer is only liable under the LHWCA if conditions at its own work site contributed to the worker's disease. Maritime employers can avoid liability entirely if they do not expose their employees to disease causing conditions. *See Faulk*, 228 F.3d at 387-88. A maritime employer can, in other words, avoid LHWCA liability in a given case by proving that the employee's disease or injury resulted exclusively from exposure during work for another employer.

For all of the foregoing reasons, we conclude that the Director's adoption of the last maritime employer rule is a reasonable administrative measure that is consistent with the purposes of the LHWCA. The rule serves Congress's overriding goal of providing injured longshoremen with prompt compensation in streamlined proceedings.

C.

Finally, Newport News asserts that the last maritime rule is unconstitutional. The company says that the rule violates the Equal Protection and Due Process Clauses, but concedes that our review is for rational basis. *See Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 83-84 (2000) (analyzing equal protection claim under rational basis review);

*Gen. Motors Corp. v. Romein*, 503 U.S. 181, 191 (1992) (same for due process claim). A rule requiring the final maritime employer to pay compensation benefits under the LHWCA when conditions at its work site contributed to an employee's disease is a rational rule because it provides a prompt and simple remedy, one that is consistent with congressional purpose. Newport News also argues that the last maritime employer rule violates the Takings Clause. Because the rule is a rational measure that assigns "the costs of the employees' disabilities to those who have profited from the fruits of their labor," it does not violate the Takings Clause. *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 18 (1976).

### III.

Lyman Stilley's widow qualifies for benefits under the LHWCA because the medical evidence established that Mr. Stilley's exposure to asbestos at Newport News was sufficient to cause his mesothelioma. It is reasonable to assign full LHWCA liability to Newport News under the last maritime employer rule even though Mr. Stilley was also exposed to asbestos with a later, non-maritime employer. The rule is also constitutional. Accordingly, the company's petition for review is denied.

*PETITION DENIED*