United States Court of Appeals,

Fifth Circuit.

No. 93-4157.

Thomas LENNON, Petitioner-Cross-Respondent,

v.

WATERFRONT TRANSPORT, Fireman's Fund Insurance Company,
Respondents-Cross-Petitioners,

and

Director, Office of Workers' Compensation of the United States
Department of Labor, Respondent.

May 17, 1994.

Petitions for Review of an Order of the Benefits Review Board.

Before WOOD, Jr.,[*] SMITH, and DUHÉ, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge:

Plaintiff Thomas Lennon, a marine dispatcher for Waterfront
Transport, injured his back while lifting a box at work.  Lennon's
duties for Waterfront Transport consisted of contacting boats by
marine radio, arranging crew changes, handling the telephone, and
managing a film account.  As part of the last of those duties,
Lennon was required to lift 35 to 50 pound boxes of motion-picture
films for use on passenger ships, and it was while lifting one such
box that Lennon sustained his back injury.

Soon after the accident Lennon sought medical advice and was
diagnosed as having a back strain compounded by pre-existing
degenerative disc disease.  Although the back strain reached

_____

[*]Circuit Judge of the Seventh Circuit, sitting by
designation.

1

maximum medical cure in October of 1981, Lennon continued to suffer from back pain. In July of 1983, Lennon was diagnosed as having a herniated disc, but only after six other physicians had examined him and found to the contrary. Although Dr. Vogel, the physician who diagnosed Lennon's herniated disc, attributed that injury to the July 1, 1980 accident, he did so without having seen or known about most of the records from Lennon's prior trips to other physicians.

Lennon sought compensation for his back injury under the Longshore and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. § 901 et seq. Waterfront and its insurer, Fireman's Fund Insurance Company (Fireman's Fund), contested both jurisdiction and causation. Regarding jurisdiction, Waterfront and Fireman's Fund contended that Lennon was not a Longshoreman for the purposes of the LHWCA. Regarding causation, Waterfront and Fireman's Fund contend that Lennon's pre-existing degenerative disc disease caused his back pain, and that his herniated disc was caused either by a subsequent fall Lennon suffered that broke his tailbone, or by an automobile accident that caused Lennon to seek medical treatment.

After trial before an administrative law judge, on December 16, 1985, the ALJ determined jurisdiction was proper under the LHWCA and found in favor of Lennon on the causation issue based in large part on Dr. Vogel's testimony. Fireman's Fund paid Lennon $42,922.71 in past due benefits, paid for Lennon's medical expenses, and began weekly payments of $205.49.

Waterfront and Fireman's Fund appealed to the Benefits Review

2

Board,[1] and on April 21, 1987, the BRB reversed the ALJ and remanded the case to the ALJ to reconsider the issues of causation, disability, and attorneys' fees.  On remand the ALJ decided that insufficient evidence existed to prove causation and therefore he denied Lennon's claim.  The ALJ also denied a motion by Waterfront Transport requesting that Lennon refund all compensation paid under the 1985 order.  On January 23, 1993, the BRB affirmed the ALJ on both accounts, and both Lennon and Waterfront Transport petition for review.

## I. ANALYSIS

## A. Jurisdiction

An injured worker must satisfy occupational and geographical status requirements to qualify for coverage under the LHWCA.  33 U.S.C. §§ 902(3), 903(a).  Waterfront and Fireman's Fund contest the ALJ's finding that Lennon satisfied the occupational requirement of Section 902(3).  Coverage pursuant to Section 902(3) includes not only workers injured on navigable waterways, but also those injured in the immediate waterfront area who participate in ongoing longshoring operations.  *Chesapeake & Ohio Ry. v. Schwalb,* 493 U.S. 40, 45, 110 S.Ct. 381, 384, 107 L.Ed.2d 278 (1989).  The LHWCA specifically excludes from coverage individuals employed exclusively to perform office clerical work.  11 U.S.C. § 902(3).

Although the ALJ found that the majority of Lennon's

---

[1]Fireman's Fund paid Lennon's benefits despite the appeal because the LHWCA requires compensation be made despite the pendency of an appeal unless irreparable injury would result. *See* 33 U.S.C. § 921(b)(3).

dispatcher duties were clerical, the ALJ also found that Lennon's duties required him to sort, pack, and handle cargo destined to be loaded upon vessels. Handling cargo, the Supreme Court has held, is "as much an integral part of the process of loading and unloading a ship as a person who participates in the entire process." *P.C. Pfeiffer Co. Inc. v. Ford,* 444 U.S. 69, 75, 100 S.Ct. 328, 333, 62 L.Ed.2d 225 (1979). The ALJ found the instances of Lennon handling cargo to be sufficiently regular so as not to be considered episodic events excluded from the act's coverage, *see Boudloche v. Howard Trucking Co.,* 632 F.2d 1346, 1347-48 (5th Cir.1980), and the ALJ therefore concluded that Lennon was a longshoreman for purposes of the LHWCA.

This court may not reweigh the evidence, but rather must confine its inquiry to whether substantial evidence supported the findings of the ALJ. *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 477, 71 S.Ct. 456, 459, 95 L.Ed. 456 (1951). The evidence of Lennon's cargo sorting, packing, and handling activities is substantial and supports the ALJ's finding that the claimant was engaged in longshoring operations. We therefore conclude that jurisdiction under the LHWCA is proper.

## B. Reimbursement

This circuit has held that federal district courts have no subject matter jurisdiction over original actions to recoup overpaid benefits under the LHWCA. *Ceres Gulf v. Cooper,* 957 F.2d 1199, 1205-07 (5th Cir.1992); *see also Stevedoring Services of America, Inc. v. Eggert,* 953 F.2d 552, 555-57 (9th Cir.1992).

4

Although the instant case did not originate in federal district court, *Ceres Gulf* and the Ninth Circuit decision in *Stevedoring* are instructive regarding whether the LHWCA permits actions for reimbursement of overpaid benefits. Both *Ceres Gulf* and *Stevedoring* based their jurisdictional analysis on the holding that all three statutory provisions for recoupment in the LHWCA[2] permit reimbursement as an offset against future benefits only. *Ceres Gulf,* 957 F.2d at 1205-07; *Stevedoring,* 953 F.2d at 555-57.

*Ceres Gulf* and *Stevedoring* reasoned that because Congress permitted recoupment only as an offset against future benefits in three separate statutory provisions of the LHWCA, it would be improper to imply a federal remedy for reimbursement. *Ceres Gulf,* 957 F.2d at 1205-07; *Stevedoring,* 953 F.2d at 555-57. We agree with the reasoning of *Ceres Gulf* and *Stevedoring.* Although the plain language of the LHWCA alone would support our holding, the legislative history of the LHWCA further bolsters our decision not to imply a federal remedy for reimbursement.

The legislative history of what is now Section 914(j) of the LHWCA confirms that Congress intended to preclude methods of recoupment other than offsets against future benefits. During

---

[2]Section 914(j) provides that "[i]f the employer has made advance payments of compensation, he shall be entitled to be reimbursed out of any unpaid installment or installments of compensation due."  33 U.S.C. § 914(j).  Section 922 provides that in cases in which a modified order decreases compensation to which the claimant was entitled, the overpaid compensation may be recovered from unpaid compensation only, if any exists.  33 U.S.C. § 922.  The same is true for compensation forfeited because the claimant failed to report, omitted, or understated earnings.  *See* 33 U.S.C. § 908(j).

5

hearings on the matter, shipbuilders' representative O.G. Brown argued against allowing offsets against future benefits only, contending that "the compensation would all be paid out, and irrevocably by the time [of a successful appeal]." *Compensation for Employees in Certain Maritime Employments: Hearings on S. 3170 Before a Subcomm. of the Senate Comm. on the Judiciary,* 69th Cong., 1st Sess. 53 (1926). Nevertheless, the response from the Chairman of the Senate subcommittee and other comments made before a house subcommittee showed that "Congress was concerned about the disabled worker receiving benefits promptly after being found deserving of same." *Rivere v. Offshore Painting Contractors,* 872 F.2d 1187, 1190 (5th Cir.1989). In fact, Congress *tightened* the criteria for obtaining a stay of payments pending appeal. 1926 Senate Hearings at 9-10 n. 2.

The legislative history of Section 922 demonstrates the same principle. In fact, Congress originally allowed *no* method of recovering overpayments, Act of Mar. 4, 1927, § 22, 44 Stat. 1437, only later to loosen that rule to allow recovery from unpaid compensation, Act of May 26, 1934, ch. 354, § 5, 48 Stat. 806, 807 (1934). Even in Section 908(j), the least favorable provision for claimants because it governs claimants who have knowingly and willfully engaged in misreporting, the House report states explicitly that "[t]he Committee does not contemplate that the employer could bring a cause of action to recover compensation paid in the past." H.R.Rep. No. 570, 98th Cong., 1st Sess., pt. I at 18 (1983) U.S.Code Cong. & Admin.News 1984, pp. 2734, 2751. If

6

Congress intended that employers not be able to seek reimbursement from those who knowingly and willfully misreport, then certainly it did not intend to allow reimbursement from less culpable employees.

Waterfront and Fireman's Fund attempt to dispute the clear language of the LHWCA and legislative history by claiming that if past compensation is unrecoverable directly from claimants, all employers would be entitled to stays of compensation awards pending review by the BRB because the lack of post-deprivation remedy always would result in irreparable injury. *See* 33 U.S.C. 921(b)(3) (providing for stays if irreparable injury would result). Waterfront and Fireman's Fund overlook, however, that the employer's inability to recover compensation on appeal is insufficient alone to demonstrate irreparable injury. *Rivere,* 872 F.2d at 1191; *Henry v. Gentry Plumbing & Heating Co.,* 704 F.2d 863, 865 (5th Cir.1983). Thus, the limited-recoupment rule is consistent with the section governing stays of compensation awards pending review. Additionally, given that employers are liable for attorneys' fees for prevailing claimants, *see* 33 U.S.C. § 928, employers still have an interest in appealing even when they have completed benefits distribution.

Waterfront and Fireman's Fund contend that the limited recoupment rule is precluded by *Crowell v. Benson,* 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598 (1922), because once the jurisdiction of an Article III court is invoked, the power to enforce its orders cannot be limited in any fashion. If Waterfront and Fireman's Fund are correct, then Congress never can specify remedies in

7

legislation—doing so would prevent Article III courts from enforcing its orders. Federal courts may not create remedies that Congress specifically intended not be available.

To the extent that Waterfront and Fireman's Fund believe that the LHWCA violates their right to Due Process, that belief is not founded in law. The LHWCA represents a compromise between the interests of injured workers, employers, and insurers. *See, e.g., In re Compensation Under Longshore & Harbor Workers' Compensation Act,* 889 F.2d 626, 632 (5th Cir.1989). Injured employees receive benefits promptly and periodically during their disability, and may take advantage of the benefits free of the worry of possible future reimbursement orders. In return employers and insurers are able to avoid employees taking advantage of superior (albeit less swift and certain) remedies in tort—a substantial benefit given the increasing number of sizable jury awards in personal injury cases. Although in individual cases this trade-off may work to the disadvantage of an employer, that result is part of the overall balance Congress sought to provide. *Potomac Electric Power Co. v. Director, OWCP,* 449 U.S. 268, 282-84, 101 S.Ct. 509, 516-18, 66 L.Ed.2d 446 (1980) ("like most workmen's compensation legislation, the LHWCA represents a compromise between the competing interests of disabled laborers and their employers.... if "compelling language' produces incongruities, the federal courts may not avoid them by rewriting or ignoring that language."). Waterfront and Fireman's Fund have advanced no reason to upset this balance.

C. Causation

8

The BRB correctly held that the ALJ initially erred in two respects. First, the ALJ failed to consider whether Waterfront rebutted with substantial evidence the presumption that Lennon's injury was work related. *See* 33 U.S.C. § 920(a). If Waterfront presented substantial evidence that Lennon's injury was not work related, the ALJ was obligated to weigh all of the evidence of record to determine whether the injury arose out of Lennon's employment. *Del Vecchio v. Bowers,* 296 U.S. 280, 286-87, 56 S.Ct. 190, 193, 8 L.Ed. 229 (1935). The BRB was correct to remand the case back to the ALJ to follow the proper analysis.

Secondly, the BRB properly reversed the ALJ on the substantive causation issues. The credibility findings of administrative law judges can be reversed only if they are patently unreasonable. *Cordero v. Triple A Machine Shop,* 580 F.2d 1331, 1335 (9th Cir.1978). The ALJ relied heavily on the testimony of Dr. Vogel, who saw Lennon in 1983, to the exclusion of six doctors who tested Lennon between 1980 and 1983. Although believing the testimony of one doctor over numerous others can be reasonable, in this case it was not. The ALJ failed to note that Dr. Vogel was unaware of: (1) the 1980 myelogram conducted by Dr. Williams finding no ruptured disc, but rather pre-existing degenerative disc disease in Lennon; (2) the 1981 diagnosis by Dr. Kenner that Lennon had Reiter's Variant, a type of autoimmune arthritic condition; (3) the January 1983 report by Dr. Shiffman indicating that Lennon's back problems were due to pre-existing arthritic changes and not the 1980 injury. The BRB correctly found that

9

given the ALJ's failure to note the major problems with Dr. Vogel's testimony, the ALJ's finding of causation was patently unreasonable.

The ALJ's finding on remand of no causation was supported by substantial evidence. *Cardillo v. Liberty Ins. Co.,* 330 U.S. 469, 477-78, 67 S.Ct. 801, 806-07, 91 L.Ed. 1028 (1947). That evidence consisted of the previously noted testimony of Lennon's doctors regarding pre-existing medical conditions, including an automobile accident and a fall that broke Lennon's tailbone (which, as Dr. Vogel admitted, could have caused the ruptured disc). Lennon failed to indicate how that evidence was insubstantial, and he raised no instances of reversible error by the ALJ in weighing the conflicting evidence and making credibility determinations. *See Avondale Shipyards, Inc. v. Kennel,* 914 F.2d 88, 90 (5th Cir.1990). The BRB was correct to affirm the ALJ's decision on remand.

## II. CONCLUSION

Jurisdiction under the LHWCA was proper. Although no causation existed between Lennon's 1980 injury and his herniated disc, the remedy to which Waterfront and Fireman's Fund are entitled is offsetting Lennon's future benefits—and as none are owing, no remedy is available—not reimbursement of benefits already paid. The petitions for review are DENIED, and the decision of the Benefits Review Board is AFFIRMED.

10