UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

———————————

No. 01-60643

———————————

COOPER/T. SMITH STEVEDORING COMPANY,
INCORPORATED,

Petitioner,

v.

ROSEMARY LIUZZA, Widow of Jake Liuzza;
DIRECTOR, OFFICE OF WORKER'S COMPENSATION PROGRAMS,
U.S. DEPARTMENT OF LABOR,

Respondents.

———————————————————————————

Petition for Review of an Order of the Benefits Review Board
———————————————————————————
June 5, 2002

Before HIGGINBOTHAM, WIENER, and BENAVIDES, Circuit Judges.

BENAVIDES, Circuit Judge:

Cooper/T. Smith Stevedoring Company, Incorporated (Cooper/T. Smith), petitions for review

of a final order of the Benefits Review Board (BRB) issued January 10, 2000, and a final order of

the BRB issued June 29, 2001, affirming a decision and order on remand by an administrative law

judge (ALJ) awarding disability and death benefits pursuant to the Longshore and Harbor Workers'

Compensation Act (LHWCA), 33 U.S.C. § 901 et seq. (1994). In its petition, Cooper/T. Smith

raises an issue of first impression: whether 33 U.S.C. § 914(j) entitles an employer to a credit or offset against a widow's death benefits for the overpayment of disability benefits erroneously awarded by the ALJ. Cooper/T. Smith also argues that the BRB erred in finding substantial evidence demonstrating that the employee's lung disease was causally related to his employment with Cooper/T. Smith and that Cooper/T. Smith was the last responsible employer. Finding no error, we deny the petition for review.

I.    BACKGROUND

Jake Liuzza, now deceased, worked as a longshoreman for numerous employers between 1947 and 1984. During this time period it is alleged that he was exposed to asbestos. He voluntarily retired in 1984. In May 1993, he was diagnosed as having squamous cell carcinoma, a malignant lung cancer. Later that month, a left upper pulmonary lobectomy was performed. The cancer reappeared in August of 1994, and a second resection was performed. He died on September 30, 1994. Subsequently, Liuzza's widow, Rosemary Liuzza (widow), filed a claim under the LHWCA, seeking death benefits as well as disability benefits on behalf of the decedent.

The ALJ found that the widow had established a causal relationship between Liuzza's employment and his lung cancer. The ALJ also determined that Liuzza had been totally disabled from May 18, 1993 through the date of his death on September 30, 1994. Accordingly, the ALJ awarded permanent partial disability compensation based upon a one hundred percent impairment for the relevant time period pursuant to 33 U.S.C. § 908(c)(23), death benefits pursuant to § 909, and funeral expenses.

Cooper/T. Smith appealed, arguing that the ALJ erred in concluding that it was the responsible employer, that the widow had established a causal relationship between the employment

and the lung cancer, and that Liuzza had been totally disabled.  The BRB vacated the finding with respect to the extent of Liuzza's disability prior to his death and remanded the case for reconsideration of the extent of impairment pursuant to the American Medical Association *Guides to the Evaluation of Permanent Impairment* (4th ed. 1993).  The BRB affirmed the decision in all other respects.

On remand, the ALJ found that the decedent was not entitled to any permanent partial disability benefits from June 1, 1993, through July 27, 1994, but was entitled to compensation benefits based on a fifty-one percent impairment rating from May 18, 1993, to May 31, 1993, and from July 28, 1994, until his death.   The ALJ rejected Cooper/T. Smith's claim that it was entitled to an offset of overpayment of disability benefits already paid against death benefits it owed the widow.  The BRB affirmed the ALJ's decision and order on remand.  Cooper/T. Smith now petitions this Court for review of the BRB's decisions.

II.      ANALYSIS

A.       Standard of Review

We review statutory interpretation by the BRB *de novo*.  *Equitable Equip. Co. v. Dir., OWCP*, 191 F.3d 630, 631 (5th Cir. 1999).  Further, our review of BRB decisions is limited to considering errors of law and whether the BRB properly concluded that the ALJ's factual findings were supported by substantial evidence on the record as a whole.  *See Darby v. Ingalls Shipbuilding, Inc.*, 99 F.3d 685, 688 (5th Cir. 1996);  *see also* 20 C.F.R. § 802.301(a) (setting forth BRB's scope of review of ALJ's decision). "Substantial evidence is that relevant evidence--more than a scintilla but less than a preponderance--that would cause a reasonable person to accept the fact finding." *Director, OWCP v. Ingalls Shipbuilding, Inc.,* 125 F.3d 303, 305 (5th Cir. 1997).  This Court "may

3

not substitute our judgment for that of the ALJ, nor reweigh or reappraise the evidence, but may only determine whether evidence exists to support the ALJ's findings." *Pool Co. v. Cooper,* 274 F.3d 173, 178 (5th Cir. 2001) (internal quotation marks and citations omitted).

B.      Denial of Offset for Overpayment under 33 U.S.C. § 914(j)

As previously set forth, Cooper/T. Smith paid disability benefits erroneously awarded by the ALJ's initial decision and order. Relying on 33 U.S.C. § 914(j), Cooper/T. Smith challenges the ALJ's denial of its request to offset against the death benefits due to the widow any overpayment of the employee's disability benefits. This appears to be a question of first impression.

Like other workers' compensation programs, the LHWCA "represents a compromise between the interests of injured workers, who receive a certain and immediate recovery, and the interests of employers and insurers, who in turn receive definite and lower limits on potential liability than would have been applicable in common-law tort actions for damages." *Ceres Gulf v. Cooper,* 957 F.2d 1199, 1205 (5th Cir. 1992) (internal quotation marks and citations omitted). With respect to reimbursement, we have explained that the LHWCA does not provide a basis upon which an employer may recover overpayments directly from the employee. *Id.* Recovery of any overpayment "can only be an offset against future LHWCA compensation." *Id.*

In answering any statutory question, we begin with the language of the statute itself. *United States v. Ron Pair Enterprises*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030 (1989). Section 914(j) is entitled "Reimbursement for advance payments," and provides that: "If the employer has made advance payments of compensation, he shall be entitled to be reimbursed out of any unpaid

4

installment or installments of compensation due."[1]

In denying Cooper/T. Smith's request for offset of the overpayment, the ALJ cited our decision in *Ceres Gulf,* 957 F.2d 1205, and ruled that there was no statutory basis for such an offset because the claims were separate. Cooper/T. Smith correctly contends that the primary issue in *Ceres Gulf* was whether the district court had subject matter jurisdiction for an original action by an employer to recover advance payments made to its former employee under the LWHCA. As previously indicated, in *Ceres Gulf* we explained that because Congress permitted recovery only as an offset against future benefits in the statutory provisions of the LHWCA, we should not imply a federal remedy for reimbursement. 957 F.2d 1205-09. *Ceres Gulf*, however, does not address the issue joined in this case, which is whether disability compensation may be credited against death benefits. Cooper/T. Smith cites no Fifth Circuit precedent (or any other circuit for that matter) in support of its argument.[2]

On the other hand, the Director of the Office of Workers' Compensation Programs, U.S. Department of Labor (Director), relying on circuit precedent, has filed a brief arguing that § 914(j) does not provide a basis for Cooper/T. Smith to be reimbursed for its overpayment of Liuzza's disability payments by collecting out of unpaid installments of the widow's death benefits. We afford

---

[1] The LHWCA contains only two other provisions for recovery of overpayment from the employee, §§ 908(j) and 922. *Ceres Gulf,* 947 F.2d at 1205. As with § 914(j), those two sections only allow recovery from the employee's unpaid compensation. Cooper/T. Smith does not allege that these sections apply to the instant claim.

[2] Cooper/T. Smith does cite a BRB decision. *Hawkins v. Harbert International, Inc.,* 33 BRBS 198 (1999). However, because the BRB is not a policy-making agency, we owe its decisions no deference. *Pool Co.,* 274 F.3d at 177. In any event, the BRB decision in *Hawkins* is inapposite. Indeed, in the case at bar on appeal from the ALJ's decision on remand, the BRB expressly distinguished *Hawkins* because it involved one death benefit (on behalf of the widow and child), and this case involves two separate claims, a disability claim and a death benefits claim.

5

deference to the Director's interpretations of the LHWCA and the amount of deference depends upon the "thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Pool Co.,* 274 F.3d at 177. Here, we are persuaded by the Director's reasoning that the BRB did not err in denying Cooper/T. Smith's request for reimbursement pursuant to § 914(j).

The Director propounds two principal arguments in support of its position. First, it argues that the plain language of § 914(j) forecloses reimbursement. Second, the Director argues that interpreting § 914(j) to be claim specific is consistent with caselaw interpreting the LHWCA.

With respect to the former argument, the Director asserts that the overpayments of compensation for which Cooper/T. Smith seeks reimbursement were made in satisfaction of a compensation order issued by the ALJ, thereby not in "advance" of that order as indicated by the language of § 914(j).[3] Section 914(j), however, does not specify the event to which the payments are made in advance. Additionally, the Director states that neither the LHWCA nor the regulations define the phrase "advance payments of compensation."

"The canons of statutory construction dictate that when construing a statute, the court should give words their ordinary meaning and should not render as meaningless the language of the statute." *White v. Black,* 190 F.3d 366, 368 (5th Cir. 1999) (citation omitted). The Director asserts that the word "advance" is commonly understood to indicate that the payments must take place prior to a specific event. "Advance payments" are defined as "payments made in anticipation of a contingent or fixed future liability or obligation." Black's Law Dictionary 52 (6th ed. 1990).

---

[3] As previously quoted, § 914(j) provides as follows: "If the employer has made *advance* payments of compensation, he shall be entitled to be reimbursed out of any unpaid installment or installments of compensation due." (emphasis added).

6

If "advance" payments included payments made after an award was ordered, that would appear to render the term "advance" nearly meaningless. In other words, virtually all payments of compensation would be "advance" if we included payments made after an award was ordered. Such an interpretation would contravene the canon of statutory construction that "a statute must, if possible, be construed in such fashion that every word has some operative effect."[4] Further, such an interpretation would not be consistent with a fundamental tenet of the LHWCA, "'the expectation that employers will pay compensation promptly and directly, without the necessity of a formal award.'" *Temporary Employment Services v. Trinity Marine Group, Inc.,* 261 F.3d 456, 459 (5th Cir. 2001) (quoting 1 THOMAS J. SCHOENBAUM, ADMIRALTY AND MARITIME LAW § 7-1, at 381 (3d ed. 2001)).[5]

We are mindful that § 914(j), a provision for reimbursement, is an incentive for employers to promptly make payments for injuries. Once an employer has been ordered to pay an award, the need for incentive pursuant to § 914(j) disappears. Indeed, the statute has another provision that applies if payment is not made pursuant to an award. Section 914(f) provides that if any compensation ordered pursuant to an award is not paid within ten days after it is due, "there shall be added to such unpaid compensation an amount equal to 20 per centum thereof." Under these circumstances, we are persuaded that "advance" refers to a time prior to the award. Here, Cooper/T.

---

[4] *United States v. Nordic Village, Inc.,* 503 U.S. 30, 36, 112 S.Ct. 1011, 1015 (1992).

[5] Congress was aware of the shipbuilders' position against allowing offsets against only future benefits pursuant to the proposed § 914(j) for fear of losing an opportunity to recover overpayments. *Lennon v. Waterfront Transport,* 20 F.3d 658, 661 (5th Cir. 1994) (*Compensation for Employees in Certain Maritime Employments: Hearings on S. 3170 Before a Subcomm. Of the Senate Comm. On the Judiciary,* 69th Cong., 1st Sess. 53 (1926)). Despite this awareness, Congress made clear that it "was concerned abo ut the disabled worker receiving benefits promptly after being found deserving of same." *Id.* (citation and internal quotation marks omitted).

7

Smith did not pay compensation until the award was ordered, and thus, the payments should not be deemed "advance payments of compensation" under § 914.

Further, although we have discovered no controlling case, our precedent informs our decision. In *Oceanic Butler, Inc. v. Nordahl,* 842 F.2d 773 (5th Cir. 1988), this Court held that an employer and insurer were not entitled to offset the disability settlement amount against liability to the employee's widow for death benefits. In that case, an employee, his employer, and insurer entered into a settlement agreement for disability compensation and applied for the required approval of the deputy commissioner pursuant to the provisions of the LHWCA. *See* § 908(i). One week later the employee perished. At that point, the settlement application was awaiting approval by the district director. The widow subsequently filed a separate claim for death benefits.

The employer and insurer then sought to withdraw from the settlement agreement, and in the alternative, argued they were entitled to offset the settlement payment for the employee's disability benefits against its liability for the widow's death benefits claims to avoid a "double recovery." With respect to the withdrawal determination, we held the employer's/insurer's promise to pay disability benefits valid and binding when made, thus rejecting the request to withdraw from the settlement agreement. With respect to the double recovery argument, the employer/insurer did not rely on § 914(j), and we characterized the request as an "extrastatutory" offset. We recognized that if the settlement had been approved prior to the employee's death, there could have been no "extra-statutory" offset. Thus, we framed the question to be "whether a submitted but unapproved settlement is closer to an approved application or an entirely unsettled claim." *Nordahl,* 842 F.2d at 785. We found it to be the former and therefore concluded that the employer/insurer was not entitled to an "extra-statutory offset" of the disability payment against its liability to the widow for death

8

benefits.

Cooper/T. Smith argues that because the instant award for both the disability and death benefits were made payable to the widow, the award is one payment. This Court has recognized that disability and death benefits are "two distinct statutory benefits." *Nordahl,* 842 F.2d at 786; *see* § 908 ("Compensation for disability") and § 909 ("Compensation for death"). Also, there is language in *Nordahl* that counsels against such a determination:

> [The] settlement of [the employee's] disputed disability claims has no effect whatsoever upon her widow's benefits, because she does not seek the disability settlement. While it is reasonable to assume that Mrs. Nordahl will take at least some portion of her childless husband's estate, it is equally plausible that the entire $75,000 will go to a home for destitute longshoremen; the point is that her right to death benefits is unaffected by potential payment from proceeds of her husband's claim. No inquiry into the disposition of the estate is necessary or even appropriate in evaluating the existence of her right, though administrative determination of the level of death benefits payable, if any, will consider her other sources of support, including the size of the estate.

*Nordahl,* 842 F.2d at 785.[6]

In the instant case, there is no contention that the widow prosecuted the disability claim in anything other than a proper capacity, *i.e.,* legal representative of the decedent's estate. As such, we are not persuaded that the ALJ's order to pay the widow the decedent's compensation somehow changed the nature of the statutory benefit. Thus, we reject the invitation to deem these two claims

---

[6] In *Nordahl,* immediately after the above-quoted language, we continued discussing a decision by an ALJ in another case in which the ALJ allowed disability payments to offset a widow's death benefits. 842 F.2d at 785 (discussing *Martin v. Kaiser Co.,* 20 B.R.B.S. 679 (1987)(ALJ)). Without much explanation, we speculated that "[i]n *Martin,* the widow sought both benefits in the same proceeding, and so administrative offset *may* have been appropriate under overriding policy considerations, despite the lack of statutory authority." *Id.* (emphasis in original). In any event, we expressly found the "persuasiveness of *Martin*" to be "suspect." *Nordahl,* 842 F.2d at 785. We agree and based on the analysis set forth above expressly reject the ruling in *Martin.*

as one.

Cooper/T. Smith's final argument with respect to reimbursement is that the principles of equity and fairness require that it receive a credit against any further death benefits owed to the widow. This Court has previously rejected the opportunity to weigh the equities in the context of a request for reimbursement pursuant to § 914(j). *See Guidry v. Booker Drilling Co.,* 901 F.2d 485 (5th Cir. 1990) (concluding that an award of attorney's fees was "separate" from a compensation award, we held that the employer could not deduct from the attorney's fees the amount it had overpaid to the employee pursuant to § 914(j)). Even were we willing to weigh the equities, we do not find that the instant situation warrants departure from the language of the statute.

In conclusion, we are satisfied that, in view of the language of § 914 and congressional intent, our precedent addressing similar issues, and the deference owed the Director's interpretation, the BRB properly concluded that § 914(j) does not provide a basis for Cooper/T. Smith to be reimbursed for its overpayment of a deceased employee's disability payments by collecting out of unpaid installments of the widow's death benefits.

### C.     Substantial Evidence

Cooper/T. Smith argues that the widow failed to bring forth substantial evidence that Liuzza's illness or death was caused by asbestos. Essentially, Cooper/T. Smith faults the ALJ for crediting the opinion of Liuzza's expert rather than its experts' opinions. Liuzza's expert, Dr. Gerald E. Liuzza,[7] is Board Certified in anatomic and clinical pathology, with a certified subspecialty in forensic pathology. Unlike Cooper/T. Smith's experts, Dr. Liuzza did not subscribe to the theory that because the employee was not diagnosed with the disease asbestosis, the exposure to asbestos could not have

---

[7] Dr. Liuzza is of no relation to the employee or the widow.

10

contributed to his illness. Instead, Dr. Liuzza testified that the exposure to asbestos, combined with the employee's cigarette consumption, caused the lung cancer. The ALJ found that such a position was supported by the medical literature submitted by the widow. Additionally, although one of Cooper/T. Smith's experts, Dr. Cagle, did not believe that the exposure to asbestos caused the disease, he admitted that the finding of two asbestos bodies on iron stained sections of the employee's lung indicated an above background level of exposure to asbestos.

More specifically, Cooper/T. Smith contends that the employee's expert relied solely on undocumented history provided to him by widow's counsel. In its decision and order awarding benefits, the ALJ recognized that the employee's expert stated that his opinion was contingent on a "documented significant exposure to asbestos and that [his opinion] is based on probabilities." The ALJ expressly found that the exposure to asbestos was significant and that the varying accounts of the employee's history of smoking did not change the fact that the "amount was significant." The ALJ concluded that although the employee's expert "testified that his conclusions were based on some assumptions regarding Decedent's history, these assumptions proved to be accurate." We have determined that there is substantial evidence to support this finding.

Cooper/T. Smith also challenges the ALJ's finding that the employee's last exposure to asbestos had been during his employment with Cooper/T. Smith. It is well established that under the LHWCA the last employer "is responsible for payment of the full amount of benefits awarded as compensation to claimants for occupational diseases." *Avondale Industries, Inc., v. Director, OWCP,* 977 F.2d 186, 190 (5th Cir. 1992). We have recognized that:

> Congress intended that the employer during the last employment in which the claimant was exposed to injurious stimuli, prior to the date upon which the claimant became aware of the fact that he was

11

> suffering from an occupational disease arising out of his employment,
> should be liable for the full amount of the award.

*Id.* (quoting *Travelers Insurance Co. v. Cardillo*, 225 F.2d 137, 145 (2d Cir. 1955)). This rule is not one of compensability. *Id.* Instead, "it is a judicially created rule for allocating liability among employers in cases where an occupational disease develops after prolonged exposure." *Id.* (citation omitted). A *prima facie* case is made by establishing that the conditions existed during the employment that could have caused the harm. An employer may rebut this presumption by demonstrating that the exposure did not cause the harm or that the employee was exposed to injurious stimuli during subsequent employment covered by the LHWCA. *Id.* We have held that if the exposure has the potential to cause the harm, the length of the exposure is irrelevant. *Id*.

In the instant case, the employee's son and wife testified that he was exposed to asbestos during his employment with Cooper/T. Smith. As set forth above, we have rejected the argument that exposure to asbestos did not cause the harm. Cooper/T. Smith also argues that Liuzza failed to bring forth "any reliable evidence to establish . . . that the decedent was employed by Cooper/T. Smith at the time of his last injurious exposure." Cooper/T. Smith misunderstands the burden-shifting framework that underlies the last employer rule. Under this rule, the employee does not have to prove that the employer is liable. *Avondale*, 977 F.2d at 190. As previously indicated, once the employee meets his burden of showing that he sustained harm and that he was exposed to conditions during his employment that could have caused the harm, there exists a compensable claim. There is no requirement that the employee prove that the employer in question was the last employer. It is the employer's burden to rebut the presumption that rises after the employee presents a *prima facie* case. In its brief, Cooper/T. Smith points to evidence indicating that Liuzza performed more work

12

as a longshoreman for other employers during the years he was exposed to asbestos. Nevertheless, we are unpersuaded that it has carried its burden of showing a specific, subsequent employment during which Liuzza was exposed to asbestos. Under these circumstances, we find substantial evidence to support the ALJ's conclusion that the employee's last exposure to asbestos was during his employment with Cooper/T. Smith.

For the above reasons, the petition for review is DENIED.