United States Court of Appeals
Fifth Circuit

**F I L E D**

May 12, 2005

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

———————————————

No. 04-60598
Summary Calendar

———————————————

OPERATORS & CONSULTING SERVICES, INCORPORATED; ZURICH AMERICAN
INSURANCE COMPANY,

Petitioners,

versus

DIRECTOR, OFFICE OF WORKER'S COMPENSATION PROGRAMS, US DEPARTMENT
OF LABOR; DANOS & CUROLE MARINE CONTRACTORS INCORPORATED; GRAY
INSURANCE COMPANY; JAMES MORRISON,

Respondents.

_____

Petition for Review of an Order
of the Benefits Review Board
03-0541

_____

Before JONES, BARKSDALE and PRADO, Circuit Judges.

EDWARD C. PRADO, Circuit Judge:[*]

This appeal involves a claim for benefits under the Longshore and Harbor Workers' Compensation Act ("the Act").[1] In their petition for review, petitioners Operators and Consulting Services, Inc. and Zurich American Insurance Company (together, "OCS") ask this court to set aside an order by the Administrative

---

[*]Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

[1]33 U.S.C. §§ 901-50.

1

Law Judge ("ALJ") holding them responsible for the claimant's disability compensation and medical costs.  For the reasons discussed below, this court denies OCS's petition for review.

**Factual Background**

Before the injury which is at the heart of this appeal occurred, OCS provided workers for the operation of an offshore platform pursuant to a contract with Burlington Resources.  OCS hired claimant-respondent James Morrison as a field mechanic to repair mechanical equipment on the platform.  As a mechanic, Morrison was required to carry equipment weighing up to 75 pounds.  On October 16, 1997, Morrison injured his back while climbing up a ladder.  A week after the accident, Morrison sought treatment for his injury from Dr. Karri Gramlich, a chiropractor.  Dr. Gramlich treated Morrison until February 1998, at which point she reported that Morrison was ready to resume work on a normal basis.

In May 1998, Burlington Resources terminated its contract with OCS and contracted with respondent Danos & Curole Marine Contractors ("Danos & Curole") to provide workers for the platform.  Danos & Curole hired Morrison on May 8, 1998 after he successfully completed a preemployment agility test.  On May 22, Morrison returned to Dr. Gramlich for treatment, complaining of pain in his left leg.  Dr. Gramlich treated Morrison until September 1998.  Because his condition showed little improvement,

2

Dr. Gramlich referred Morrison to Dr. Andrew Wilson, a neurosurgeon.  Dr. Wilson began treating Morrison on September 15, 1998, but Morrison's condition worsened to the point that he was unable to continue working.  Danos & Curole terminated Morrison on October 22, 1998.  Dr. Wilson operated on Morrison's back on July 9, 2001.

Morrison filed claims for disability compensation and medical expenses under the Act against both OCS and Danos & Curole.  Danos & Curole denied responsibility for Morrison's disability, maintaining that the disability resulted from the natural progression of the October 16, 1997 injury Morrison suffered while working for OCS.  After considering the evidence, the ALJ agreed with Danos & Curole.  The ALJ found that Morrison's disability was attributable to the injury he sustained while working for OCS and that Morrison's back condition was not aggravated by his employment with Danos & Curole.  The ALJ, therefore, concluded that OCS was responsible for all of Morrison's disability compensation and medical expenses.

OCS appealed to the Department of Labor's Benefits Review Board ("the Board").  The Board affirmed the ALJ's ruling.  OCS now asks this court to set aside the ALJ's order.

**Standard of Review**

This court reviews a decision of the Board using the same

standard the Board applies to review a decision of the ALJ.[2]  That is, this court determines whether the ALJ's decision is supported by substantial evidence.[3]  "Substantial evidence is that relevant evidence——more than a scintilla but less than a preponderance—— that would cause a reasonable person to accept the fact finding."[4] This court may not substitute its judgment for that of the ALJ, nor reweigh or reappraise the evidence; instead, it may only determine whether evidence exists to support the ALJ's findings.[5] This court will uphold the Board's decision if the ALJ's decision is supported by substantial evidence.[6]

**Analysis**

OCS challenges the ALJ's determination that it is solely responsible for Morrison's disability.  OCS maintains that Morrison's injury was aggravated while he worked for Danos & Curole, and that as a result, Danos & Curole is liable for the costs of Morrison's disability.  Specifically, OCS contends that the ALJ misapplied the "aggravation rule."

---

[2]*SGS Control Servs. v. Dir., Office of Worker's Comp. Programs*, 86 F.3d 438, 440 (5th Cir. 1996).

[3]*SGS Control Servs.*, 86 F.3d at 440.

[4]*Dir., Office of Workers' Comp. Programs, U.S. Dep't of Labor v. Ingalls Shipbuilding, Inc.*, 125 F.3d 303, 305 (5th Cir. 1997).

[5]*SGS Control Servs.*, 86 F.3d at 440.

[6]33 U.S.C. § 921(b)(3).

4

The "aggravation rule" is a judicially created rule for allocating liability among employers for a worker's injury.[7]  The rule provides that if a claimant's disability arose from the natural progression of an injury sustained while working for the first employer, that employer is completely liable for the subsequent expenses the claimant incurs from the injury, even after the claimant no longer works for the first employer.[8] However, in cases where the disability results from cumulative traumas, the responsible employer depends upon the cause of the worker's ultimate disability.[9]  If the disability is "at least partially the result of a second trauma that occurs while working for a second employer and that injury aggravates, accelerates or combines with the prior injury to create the ultimate disability," the second employer is liable for all medical expenses and compensation.[10]  Thus, the dispositive issue in this appeal is whether Morrison's disability arose from the natural

---

[7]*See Cooper/T. Smith Stevedoring Co., Inc. v. Liuzza*, 293 F.3d 741, 749 (5th Cir. 2002) (discussing the aggravation rule for allocating liability for an occupational disease that develops after prolonged exposure to an injurious stimuli).

[8]*See Metro. Stevedore Co. v. Crescent*, 339 F.3d 1102, 1105 (9th Cir. 2003) (describing the last responsible employer rule——otherwise known as the aggravation rule——in the context of an occupational disease); *Strachan Shipping Co. v. Nash*, 782 F.2d 513, 517 (5th Cir. 1986) (explaining that this circuit has consistently applied the aggravation rule in longshoremen cases).

[9]*Metro. Stevedore Co.*, 339 F.3d at 1105.

[10]*Id.*

progression of the injury suffered on October 16, 1997 while he worked for OCS, or whether his disability was caused by an aggravation, exacerbation, or acceleration of that injury while he worked for Danos & Curole.

Here, substantial evidence supports the ALJ's finding that Morrison's disability resulted solely from the injury he suffered during his employment with OCS. Dr. Wilson testified in his deposition that he began treating Morrison in September 1998. Dr. Wilson opined that Morrison's injury naturally progressed to the point that surgery was the only way to mitigate further damage. Dr. Wilson admitted, however, that there was a possibility that Morrison's employment with Danos & Curole exacerbated Morrison's condition.

Dr. Gramlich also attributed Morrison's surgery to the injury that occurred in October 1997. She acknowledged that working for Danos & Curole may have aggravated Morrison's back condition, but opined that the herniated disk that required surgery resulted from Morrison's original injury during his employment with OCS.

In addition, Morrison testified that he continued to experience lower back pain while working for OCS. Morris explained that nothing about his job changed when he began working for Danos & Curole. He stated that he continued to perform the same job on the same platforms, but explained that he worked smarter to avoid hurting his back. He described his job

6

with Danos & Curole as neither more nor less strenuous than his work with OCS. Together, testimony from these witnesses constitutes substantial evidence that Morrison's disability resulted from the natural progression of the injury he suffered in October 1997.

OCS argues that passing the preemployment agility test shows that Morrison's back was no longer impaired when he began working for Danos & Curole. However, Martin Knijn, the physical therapist who conducted the agility test, testified that the test was designed to test capabilities, not the amount of stress the back could sustain. Knijn explained that the successful completion of the test demonstrates that an employee is capable of performing most of his job duties for a limited amount of time. Thus, passing a preemployment agility test does not necessarily indicate that Morrison's initial back injury was resolved by the time he began working for Danos & Curole.

OCS also argues that Morrison's strenuous work activities with Danos & Curole over a five month period demonstrate that the disability arose from an aggravation or acceleration of a preexisting injury. Morrison, however, testified that his job with Danos & Curole was neither more nor less strenuous than his work with OCS, and he did not testify that he suffered a subsequent injury. Although Morrison explained that Dr. Gramlich released him to return to work for OCS, substantial evidence indicates that he was not symptom-free at that time and that his

pain progressively increased throughout the time he worked for OCS.

Substantial evidence supports the ALJ's finding that Morrison's disability resulted from the natural progression of his October 1997 injury; thus, under the "aggravation rule," OCS, as the first employer, is solely responsible for Morrison's disability.

**Conclusion**

The ALJ did not err by determining that OCS is responsible for Morrison's disability compensation and medical costs because substantial evidence indicates that Morrison's disability was caused by his injury while working for OCS. As a result, the Board properly affirmed the ALJ's decision. Consequently, this court DENIES the petition for review.

PETITION DENIED.